In the Matter of the Accounting of FRANK R. CALDWELL et al., as Executors of CHARLES W. GARLOCK, Deceased.

ADDIE GARLOCK, Individually and as Executrix, Appellant; ELIZABETH A. GARLOCK, as Assignee of FRANK G. GARLOCK, et al., Respondents.

1. DECEDENT'S ESTATE — WHEN DECREE OF SURROGATE REFUSING TO ALLOW EXECUTRIX COST OF BURIAL LOT MUST BE SUSTAINED. Where a testator owned a burial lot in the cemetery of an incorporated cemetery association, in which there remained sufficient space for the burial of three more bodies, and the executrix, testator's widow, caused his body to be interred in another lot in the same cemetery which she purchased for that purpose, claiming that testator's son had refused to permit the burial of testator's body in the lot owned by him at the time of his death and that he had also refused to recognize her own right to burial therein, a finding of the surrogate, unanimously affirmed by the Appellate Division, that there was no refusal by any person or persons, having an interest in said cemetery lot, to allow the burial of decedent, or his widow, in the event of her death, therein, is conclusive upon the Court

of Appeals and sustains the propriety of the surrogate's ruling that the purchase price of the second lot was not chargeable against the estate.

2. Same — When Decree of Surrogate Refusing to Allow Executrix Counsel Fees Paid to Attorneys Employed by Her Must Be Sustained — Nomination, by Testator, of Attorneys to Perform Services Necessary in Administration of Estate.   While a finding of the surrogate, unanimously affirmed by the Appellate Division, that the services rendered by an attorney, employed by the executrix, were rendered to her personally rather than as executrix, and that all legal services necessary for the administration of the estate were performed by a firm of lawyers, whom testator assumed to appoint for that purpose by a provision of his will, precludes the Court of Appeals from reviewing a ruling of the surrogate, based upon such finding, which disallowed the amount paid by the executrix to such attorney, it must not be understood therefrom that the appointment of attorneys by the will was binding upon the executors; the law of this state does not recognize any testamentary power to control the attorneys or counsel who shall act for them in their representative capacity; such a provision, therefore, is to be regarded merely as expressive of a wish on the part of a testator, which his executors may observe if it accords with their own judgment, but which otherwise they are not bound to regard.

3. Will — Equitable Conversion Effected by Codicil to Will — When Proceeds of Real Estate Pass under Bequest of Personal Property.   Where testator, by a clause of his will, conferred upon his executors the power to sell and convey any and all of his real estate, and by a codicil thereafter made directed his executors to sell all of his real estate not specifically devised by the will itself and turn the same into money as soon as it might be done for the best interests of his estate; such codicil not only substitutes, for the discretionary power of sale conferred by the will, a positive and absolute direction for the sale of testator's real estate not specifically devised, but also operates as an equitable conversion of the real estate to which it refers and the proceeds thereof should be distributed as personal property under the will; testator's widow is entitled, therefore, to receive one-third of such proceeds, under the clause of the will giving her one-third of testator's personal property, instead of the whole thereof going to testator's son under the residuary clause of the will, by which he devised to his son all of his real and personal estate not specifically bequeathed and devised by prior provisions of the will.

*Matter of Caldwell,* 114 App. Div. 906, modified.

(Argued February 27, 1907; decided March 12, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered

June 1, 1906, which affirmed a decree of the Onondaga County Surrogate's Court settling the accounts of the executors herein.

The facts, so far as material, are stated in the opinion.

*William Rubin* for appellant.    The executors were directed to sell all the real estate not specially bequeathed and turn the same into money.    There was, therefore, a conversion of realty into personalty.    (Chaplin on Wills, 457; *Fraser* v. *Trustee, etc.*, 124 N. Y. 479; *Fisher* v. *Banta*, 66 N. Y. 476; *Moncrief* v. *Ross*, 50 N. Y. 436; *McDonald* v. *O'Hara*, 144 N. Y. 568; *Delafield* v. *Barlow*, 107 N. Y. 568; *Morse* v. *Morse*, 85 N. Y. 53; *Lent* v. *Howard*, 89 N. Y. 177; *Dodge* v. *Pond*, 23 N. Y. 69; *Hope* v. *Brewer*, 136 N. Y. 134; *Salisbury* v. *Slade*, 160 N. Y. 278.)    It was the duty of the executrix to have given proper burial to the testator and to have erected a suitable monument at his grave.    The law implies a promise on the part of the executor to pay the one who in the absence or neglect of the executor incurs or pays such expense. (*Patterson* v. *Patterson*, 59 N. Y. 582; *Young* v. *Young*, 2 Misc. Rep. 381.)    The appointment of Wilson & Wortman as attorneys was simply a request and not a direction, as it would be against public policy for executors to be compelled to retain attorneys who might be hostile or adverse in their actions.    (Williams on Exrs. 115; *Fox's Appeal*, 123 Penn. St. 518; *Matter of Holden*, 126 N. Y. 593; Redfield on Surr. Pr. 442.; *Matter of Delaplaine*, 19 Abb. [N. C.] 413; *Matter of Hutchinson*, 84 Hun, 593; *Matter of Halsey*, 13 Abb. [N. C.] 354; *Fowler* v. *Lockwood*, 3 Redf. 465; *Campbell* v. *Mackie*, 1 Den. 185; *Frith* v. *Campbell*, 53 Barb. 325; *Matter of T. G. & T. Co.*, 114 App. Div. 778.)

*W. L. Barnum* for respondents.    The finding of the court refusing to allow the payments by Addie Garlock of $191.90 for a burial lot, and $400 to her personal attorney, was abundantly sustained by the evidence herein. (*Matter of Ogden*, 41 Misc. Rep. 158; *Matter of Quinn*, 16 Misc. Rep.

651; *Matter of Arkenberger*, 13 Misc. Rep. 744; *Matter of Van Nostrand*, 3 Misc. Rep. 396; *Matter of Holden*, 126 N. Y. 589; *Matter of Hutchinson*, 84 Hun, 563; *Matter of T. G. & T. Co.*, 114 App. Div. 778.) The direction contained in the first paragraph of the codicil of testator's will does not create an equitable conversion and the widow is not entitled to receive any share from the proceeds of the real estate. (*Clemens* v. *Babcock*, 26 Misc. Rep. 90 ; *Matter of Tienkin*, 131 N. Y. 391; *Miller* v. *Gilbert*, 144 N. Y. 68 ; *Chamberlain* v. *Taylor*, 105 N. Y. 185 ; *Scholle* v. *Scholle*, 113 N. Y. 261; *Matter of Tatum*, 169 N. Y. 514; *Fraser* v. *Trustees, etc.*, 124 N. Y. 479 ; *Fisher* v. *Banta*, 66 N. Y. 476 ; *Phelps* v. *Pond*, 23 N. Y. 69 ; *Moncrief* v. *Ross*, 50 N. Y. 431.)

WILLARD BARTLETT, J.    This appeal brings up for our consideration the rulings of the surrogate of Onondaga county in respect to three matters in controversy between the widow and executrix of Charles W. Garlock, deceased, on the one hand, and her co-executor and the other parties interested in the estate on the other.

The will of Charles W. Garlock was executed on March 13, 1903.  In the first paragraph the testator directed that all his just debts and funeral expenses be paid.  In the second paragraph he bequeathed to his wife, Addie Garlock, all his household goods and furniture and jewelry and diamonds, except his diamond stud.  In the third paragraph he devised to his said wife the use, rents, income and profits of his house No. 820 East Fayette street, in Syracuse, for and during the term of her natural life if she should remain unmarried, and, upon her death or remarriage, to his son, Frank Garlock, in fee.    Then follow various specific legacies until we come to the seventh paragraph, which reads as follows: " I give and bequeath to my said wife, Addie Garlock, one-third of all the rest, residue and remainder of my personal estate of every name and nature whatsoever."  By the eighth paragraph the testator bequeathes to his son Frank Garlock his diamond stud.

The ninth paragraph is in the following words : " I give, devise and bequeath to my son Frank Garlock all the rest, residue and remainder of my estate, both real and personal, of every name and nature whatsoever, to have and to hold unto his sole use, benefit and behoof forever." By the tenth paragraph the devises and bequests made to the testator's wife, Addie Garlock, are declared to be in lieu of dower. The eleventh paragraph confers upon the executors power to lease, mortgage, sell and convey any and all real estate of which the testator may die seized, but contains no absolute direction to sell. By the twelfth paragraph the testator assumes to " appoint Wilson & Wortman, attorneys at law, of Syracuse, N. Y., attorneys for my estate, upon the probate of this my last will and testament, and upon all other matters wherein my executors shall require legal services or advice in the settlement of my estate." The testator's cousin, Frank Caldwell, was appointed executor, and his wife, Addie Garlock, executrix of the will.

On May 23, 1903, the testator executed a codicil, the first paragraph of which reads as follows : " I direct my executors to sell all my real estate not specially bequeathed by my said last will and testament of which I may die seized and to turn the same into money, as soon as it may be done for the best interests of my estate." The codicil contains some specific bequests not involved in this litigation. The only other provision material to be considered is the third numbered paragraph which is in these words: " I give and bequeath to Oakwood, a Cemetery Association of the City of Syracuse, N. Y., one hundred dollars, the annual income thereof to be used for the care of my burial lot in said cemetery."

The burial lot referred to in the codicil had belonged to the testator for many years prior to his death and there were buried therein the body of his first wife, the body of a daughter and the body of a sister-in-law. Sufficient space still remained in this lot for the burial of three more bodies. Instead of burying the body of the testator there his executrix caused his remains to be interred in another lot in the

same cemetery which she purchased for the purpose at an expenditure of $191.90; and this amount the surrogate refused to allow her upon the accounting under review. She offered evidence tending to show that her stepson had practically refused to permit the burial of the testator's body in the lot which he owned during his lifetime and also refused to recognize her own right to burial therein. If the findings sustained her position in this respect there can be no doubt that the amount which she expended for the new lot would be a proper charge against the estate. (*Patterson* v. *Patterson*, 59 N. Y. 574, 582.) The case cited is authority for the proposition that where a deceased person leaves an estate it is the duty of his personal representatives to provide for the reasonable and necessary expenses of the burial of his remains out of such estate. Furthermore under a provision of the Membership Corporations Law "The remains of a widow may be buried in a burial lot of which her husband died possessed and in which his heirs continue to have an estate or right of burial without the consent of any person whomsoever claiming any interest in such lot." (Laws of 1895, chap. 559, § 51, as amended by Laws of 1900, chap. 715.) We have in the present case, however, an express finding by the learned surrogate that the right to bury the said Charles W. Garlock in the lot owned by him at the time of his death was not refused by the executors or by the remaining family of the said Charles W. Garlock, and that there was no refusal by any person or persons having an interest in said cemetery lot to allow the burial of Addie Garlock therein in the event of her death. This finding, sustained as it is by the unanimous affirmance in the Appellate Division, is conclusive upon this court and sustains the propriety of the surrogate's ruling that the purchase price of the second lot was not chargeable against the estate.

The second item in controversy is the claim of the executrix to be allowed $400 paid to Mr. William Rubin for professional services as an attorney at law. As to this matter also we are precluded by the finding of the surrogate to the effect

N. Y. Rep.]   Opinion of the Court, per WILLARD BARTLETT, J.

that Messrs. Wilson & Wortman have at all times performed all services necessary for the administration of the estate and his further finding to the effect that the services performed by Mr. Rubin for the appellant, and for which he charged her the sum of $400, were rendered to her personally rather than as executrix.   Such is our construction of his finding upon this subject, from which the words "as executrix" are omitted.   While the unanimous affirmance forbids any review of these findings here, it must not be understood that in sustaining this part of the decree we concede the correctness of the proposition argued in the brief for the respondent that the appointment of Messrs. Wilson & Wortman as attorneys of the estate by the twelfth clause of the will was binding upon the executors.   The law of this state does not recognize any testamentary power to control executors in the choice of the attorneys or counsel who shall act for them in their representative capacity.   They may incur a personal liability for the conduct of their lawyers, and hence they are beyond the control of their testator in making the selection.   Such a provision, therefore, as this will contains in reference to the attorneys to be employed is to be regarded merely as expressive of a wish on the part of the testator which it is most proper for the executors to observe if it accords with their own judgment, but which otherwise they are not bound to regard.

Proceeding finally to a consideration of the third question presented by this appeal, it seems to us very clear that the appellant is right in respect to the meaning and effect of the first numbered paragraph in the codicil.   By that paragraph the testator substituted for the discretionary power to sell conferred upon his executor and executrix by the eleventh paragraph of the will a positive and absolute direction for the sale of all his real estate not specifically devised by the will itself. The direction to his executors to sell which is contained in this paragraph of the codicil is so clear and emphatic as unquestionably to work an equitable conversion of the real estate to which it refers.   At the time of his decease the tes-

tator owned two pieces of land, to wit, No. 820 East Fayette street in the city of Syracuse, and No. 818 in the same street. No. 820 was specifically devised to the appellant for life with a remainder in fee to the testator's son, Frank Garlock, upon the decease of the widow or her remarriage. No. 818 is not expressly mentioned in the will, and if there had been no codicil the effect of the ninth paragraph of the will would have been to devise that house to the testator's son, Frank Garlock. On the other hand, if by reason of the provisions of the first paragraph in the codicil all the testator's real estate except the house devised to his widow for life, is to be deemed converted into personal property then the widow under the provisions of the seventh paragraph of the will which gives her one-third of all the rest, residue and remainder of the testator's personal estate would take one-third of the sum which the executors have derived from the sale of No. 818 East Fayette street. In other words, if an equitable conversion is effected by the first paragraph of the codicil then the proceeds of the sale of No. 818 are divisible under the will as personal property and the bequest to the widow is increased to the extent of one-third of such proceeds.

It would be difficult to find in the reported cases dealing with the subject of equitable conversion a more emphatic direction to sell than that contained in the first paragraph of the codicil here. It is not at all like the case of *Parker* v. *Linden* (113 N. Y. 28), where the direction for conversion was plainly to carry out other purposes of the will which purposes had failed. There the testator intended that the estate should be converted into personalty only in order that an alien brother and sister might take and that purpose was rendered nugatory by the death of such brother and sister before the death of the testator. In the case at bar, however, no purpose of any kind on the part of the testator is disclosed except such as might be inferred from the language of the codicil itself. That purpose must have been to enlarge the personalty so that the widow might share therein. It is impossible to account for the insertion of this imperative direction to sell in the very

beginning of the codicil unless it was designed to benefit the widow. As there was only one piece of real estate in addition to that specifically devised to the widow for life there was nothing upon which the first paragraph of the codicil could operate except No. 818 East Fayette street; and the only conceivable object which the testator could have had in view in placing the direction to sell at the outset of the codicil was his desire to increase the proportion of his estate which was to go to the widow. It seems to us, therefore, that the learned surrogate committed an error in the conclusion of law whereby he found that no equitable conversion arose out of the direction contained in the first clause of the codicil, and that the proceeds of the real estate sold thereunder should not be distributed as personal property. We are of the opinion, on the contrary, that the first paragraph of the codicil did effect an equitable conversion and that the proceeds of the real estate sold thereunder should be distributed as personal property under the will. The result of this view is that the appellant as the widow of the testator is entitled to receive one-third of the moneys realized by the executor from the sale of No. 818 East Fayette street; and that the decree of the Surrogate's Court is erroneous and should be reversed so far as it denies the right of the appellant to that proportion of the sum received upon the sale of that house. The decree should, therefore, be modified so as to adjudge that the widow is entitled to receive one-third of the personal property less the specific bequests made in the will, there being included as part of such personal property the proceeds of the sale of No. 818 East Fayette street. As the widow's right to share in these proceeds is the principal question involved in this appeal we think that considerations of equity demand that she should be awarded costs in all the courts.

The judgment and order of the Appellate Division and the decree of the Surrogate's Court of Onondaga county should be reversed to the extent indicated in this opinion and the proceeding remitted to the Surrogate's Court with directions to modify the decree so as to award to the appellant

one-third of the proceeds of the sale of the testator's real estate, with costs to the appellant in all the courts payable out of the estate. ·

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment accordingly.