· In re THISTLETHWAITE et al.

In re BICKFORD'S WILL.

(Surrogate's Court, Wayne County.   March 29, 1907.)

1. COURTS—SURROGATE'S COURT—JURISDICTION—CONSTRUCTION OF WILL.
    The Surrogate's Court has jurisdiction to construe a provision of a
    will and determine its meaning and validity, in order to make a proper
    decree of distribution.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 87.]

2. WILLS—CONSTRUCTION—PRECATORY EXPRESSIONS.
    Precatory expressions in wills will not be given the weight of an ab·
    solute command, unless the intent of the testator that such should be
    their effect is beyond any question.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1587.]

3. SAME.
    A provision in a will directing that testator's friend, who had been
    his attorney for many years, should be continued in the management of
    testator's estate so far as legal advice should be necessary, was not a
    trust, and did not create a beneficial interest in the estate in favor of the
    attorney named, so as to preclude the executors from employing other
    counsel, or render them liable on such employment to the attorney named
    for the amount paid by them to other counsel for legal services.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1587.]

In the matter of the settlement of the accounts of William P. Thistle-
thwaite and another, as executors of the last will and testament of
Lyman Bickford, deceased.   Upon the claim made by Charles Mc-
Louth, and also upon certain objections filed by him to the executors'
account, together with objections filed by Mr. Smythe, Mr. Shutt, and
Mr. Tinklepaugh, in behalf of the parties for whom they respectively
appear.   Order for settlement of decree.

C. E. Shuster (Myron H. Peck, of counsel), for executors.
Reed & Shutt, for George W. Kirkpatrick and others.
F. J. Smythe, for the Universalist General Convention and others.
George S. Tinklepaugh, for William A. Wilder and others.
Erwin E. Shutt, as special guardian, for H. Richmond Platt and
another.
Charles McLouth and Henry R. Durfee, for Charles McLouth.

SAWYER, S.   Lyman Bickford died in the county of Wayne on
the 14th day of November, 1900, leaving a last will and testament,
which, with certain codicils thereto, was duly admitted to probate,
and the probate thereof thereafter confirmed by an action in the Su-
preme Court.   Letters testamentary under the will and codicils were
issued to these accounting executors, who were named as such by the
testator.   Mr. Bickford left a very large and valuable estate, and no
direct descendants. . His will is quite lengthy, dividing his property
among various people and corporations, and also containing the fol-
lowing paragraph:

"Thirteenth. I direct and desire that my friend, Charles McLouth, the
draftsman of this will, who has been my attorney and adviser for many years

and has had charge of all my legal business, shall be continued in the management of my estate, so far as legal advice or assistance shall be necessary or had by my executors."

After the death of Mr. Bickford, a considerable litigation followed in connection with the probate of his will, and the action in the Supreme Court for the confirmation of its probate, in all of which proceedings and litigations the said Charles McLouth represented these executors as their attorney, and had charge generally of the legal matters pertaining to the estate. It appears that after the will and its codicils had been finally probated, both in this state and in the states of Michigan and Ohio, and proceedings had for the ascertainment and payment of the federal inheritance tax, the law governing which was then in force, and about the middle of February, 1902, a settlement was had by these executors and Judge McLouth for all legal services to that date, and the amount found due to him upon such settlement was then paid. No claim is made before me that the amount paid upon that settlement was excessive, or more than commensurate with the work which had been performed, and, indeed, having in view the magnitude of the interests involved and the work which was done, of which this court has some personal knowledge, it could not fairly be said to be excessive.

From time to time thereafter, until the submission of this case, it became necessary for the executors in the conduct of the affairs of the estate to employ an attorney, and as necessity and occasion arose they employed Mr. Clarence E. Shuster, who also now represents them, paying him, as appears from their accounts, for his services and disbursements a considerable sum of money. Judge McLouth was not in any manner employed by them subsequent to the settlement of February, 1902, although he at all times was ready and willing to perform any such services as might be required, of which the executors were cognizant. It is now claimed by him that the clause of the will in controversy was intended by Mr. Bickford to be in effect a legacy to him, creates a trust for his benefit, gives to him a beneficial interest in the estate of Mr. Bickford, and that the employment of Mr. Shuster by these executors was wholly unauthorized; that under the will in question he alone should have been employed, and is the only person who is entitled to any compensation from the estate for legal services; that he is entitled to all the compensation which in the course of administration of Mr. Bickford's estate it became necessary or expedient for these executors to incur for such services; that the amount paid to Mr. Shuster fixes the sum that was in Mr. Bickford's contemplation when the will in question was drawn; and that he is entitled upon this accounting to a direction that a sum of money equal to that paid to Mr. Shuster be paid to him substantially as a legacy from Mr. Bickford, and that the moneys charged in their accounts as paid by these executors to Mr. Shuster be disallowed.

At the outset, certain preliminary objections to the claims of Judge McLouth were interposed in behalf of the executors. I do not deem it necessary, with one exception, to give these preliminary objections any particular attention at this time. Suffice it to say that in the

judgment of the surrogate they are not well taken. The one, however, which raises the question of the jurisdiction of the court, is vigorously insisted upon by the executors as well founded. It is true that, some time after the accounts of the executors were filed and the exact amount which had been paid to Mr. Shuster ascertained from such accounts, a claim against the estate of Lyman Bickford for that sum of money and based upon the provision of the will in question was served by Judge McLouth upon the executors, and that in due course such claim was rejected, and no reference has ever been had or action brought thereupon; neither has a stipulation been made that it may be passed upon by the surrogate upon the final accounting. If the claim in question is one of those contemplated by sections 1822 or 2743 of the Code of Civil Procedure, this court is, of course, without power to hear and determine the same in these proceedings.

It is, however, urged in behalf of Judge McLouth, as above stated, that his claim is not such a one as is contemplated by those sections, but that the paragraph in the will under consideration creates for him a trust and beneficial interest in the estate, and was intended to be and is a legacy from the testator to him, and that he has an interest and standing in these proceedings substantially the same as any other legatee. This contention is entirely different in its legal effect from that made by Judge McLouth in the service of his former claim in August last, and, while it may indicate a change of mind upon his part as to his exact legal status, I know of no law which prevents a man changing his mind as to his course of procedure, or of abandoning a proceeding which he has become convinced is not well founded, and adopting such course of action as he is advised is in accordance with his legal rights.

It therefore becomes necessary for the court in this proceeding to determine whether or not his present claim is valid, in order to direct by decree the distribution of the estate in accordance with the terms of the will; and there can be no question whatever as to the authority of the surrogate to construe this provision of the will and determine its meaning and validity, in order to make a proper decree of distribution. Tappen v. M. E. Church, 3 Dem. 187; In the Matter of Havens, 8 Misc. Rep. 574, 29 N. Y. Supp. 1085; Riggs v. Cragg, 89 N. Y. 479; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599. It follows, therefore, that the objection to the jurisdiction of the surrogate must be overruled, and the matter disposed of upon the main question.

The evidence shows that for a considerable length of time these executors obeyed the plain, precise direction of their testator, and that Judge McLouth acted for them as the attorney of the estate. No criticism of him or of his work is made or attempted to be made, and in the absence of criticism it must be assumed that he not only had the entire confidence of their testator, but that he served these executors during his employment with skill and fidelity. The question, therefore, narrows down to this: Has an executor, without any reason other than a mere whim, the right to disregard a plain mandate of this character, expressed in so solemn a manner as by a formal direction of his testator in a last will and testament? No

question of misunderstanding by Mr. Bickford of the import of his will can be had; for one of these executors, who was also his confidential secretary, has testified that, many times after the will was drawn and executed, he, at Mr. Bickford's request, procured it from the place where it was kept, gave it to Mr. Bickford, who looked it over and carefully studied its provisions, and from time to time caused codicils to be added to meet changing conditions, but never in any manner altered or interfered with this thirteenth clause.

Was, therefore, the clause under consideration intended by the testator to be followed without deviation, and to create a trust in favor of Judge McLouth, or was it intended as a suggestion only? "The fundamental and controlling rules for the construction of wills are familiar and well understood. The first and great rule in the exposition of wills, to which all others must bend, is that the intention of the testator shall prevail, provided it be consistent with the rules of law. In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning with which the testator used them. * * * The object, therefore, of a judicial interpretation of a will, is to ascertain the intention of the testator according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed." Colton v. Colton, 127 U. S. 302, 8 Sup. Ct. 1164, 32 L. Ed. 138.

The words used by Mr. Bickford are precatory in their character, and expressions of this nature have been construed as creating a trust; "but this construction will not prevail when either the objects to be benefited are imperfectly described, or the amount of property to which the trust should attach is not sufficiently defined." Bouvier's Law Dictionary. And after a somewhat extended research I have been unable to find any case where they have been construed as mandatory, unless the person pointed out as the beneficiary thereof was one who would be naturally the object of testator's bounty, as it must be conceded in this case Judge McLouth was not. Judge Danforth, in Foose v. Whitmore, 82 N. Y. 405, 37 Am. Rep. 572, quotes Lord Cranforth in relation to words of this character, upon page 407 of 82 N. Y.:

"That the real question always is whether the wish or desire or recommendation that is expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion."

And it is a well-understood rule of law that the courts will not give precatory expressions the weight of an absolute command, unless the intent of the testator that such should be their effect is beyond any question.

Did Mr. Bickford intend this precatory clause of his will to be primarily a benefit and a trust in favor of Judge McLouth? I think not. If he had intended that Judge McLouth should directly benefit from his estate, is it not fair to assume that he would have expressly made him a legatee in the same manner as he did all the other persons and corporations among whom he divided his property, and in the same manner as he did in the twenty-sixth subdivision of the sixth paragraph of his will, in and by which he did make him a specific legatee? Is it not rather a natural inference, from the will as a whole and from the situation in which Mr. Bickford then was, that this clause in question was intended primarily for the benefit of his own estate, and that no intention of benefiting Judge McLouth was present in his mind or considered by him, except in so far as he knew that Judge McLouth incidentally would benefit from the compensation he received for the services to be rendered the estate?

At the time the will was drawn, Mr. Bickford was nearly 80 years of age. His only child had died many years before without descendants. He had no immediate family, except his wife, who, like himself, was advanced in life, and could not be expected to survive him many years. In fact, her death preceded his, requiring changes to be made in the original will, by the first codicil thereto. His estate was large, valuable, and widely invested. He well knew the condition of his estate and the persistent effort that would be required to reduce it into money. His long years of business activity had taught him that many questions would arise in which his executors would need to be guided by one learned in the law. Judge McLouth was an attorney of long experience, ample responsibility, and of great skill and ability in his profession. For more than 40 years he had been, not only Mr. Bickford's social and political friend, but his business confidante and legal adviser, and was known by him to be not only learned in the law, but careful, thorough, and of excellent judgment. Mr. Bickford was anxious that no unavoidable loss should happen to his estate, and that same should be paid into the hands of his legatees and devisees in full and without unreasonable delay. What is more natural than that his mind should have reverted to this friend and counselor, who had served him honestly and successfully during a long period of years and was familiar with his business affairs, as being a proper person to guide and advise his executors, to the end that his testamentary desires might be carried into effect exactly as he had planned?

Looking back into his mind as well as we are able, and reading the will in the light of his then circumstances, as narrated in the evidence and by Judge McLouth in his loving tribute to the memory of his friend upon the opening of the case, I am convinced that Mr. Bickford's true intention, by this thirteenth clause of his will, was that his estate and his executors and his legatees should have the benefit of legal services whose value none knew better than he, and while he, of course, anticipated and expected that those services would be properly compensated from his estate, yet that question was, in my judgment, subordinate and incidental to his main desire. Death is not only cessation of life, but the ending of business judgment and discretion, and the

personal representative of a decedent from henceforth must exercise the discretion and judgment necessary to meet conditions which human experience teaches are ever changing. No human foresight can anticipate and provide for all the changes and contingencies of the future, and, while a testator may direct the channel into which his property shall ultimately be turned, the management thereof pending final distribution must of necessity be left to the responsible representative, as the needs of changing conditions may require.

If, as is claimed by Judge McLouth, this designation of himself as the attorney for the executors of the estate is a trust creating in him a beneficial interest in the estate, and absolutely binding upon the executors, it robbed them entirely of the discretionary power which the law otherwise gave them. This for one moment cannot seriously be claimed; for, if true, if that designation erected an enforceable trust for his benefit, no change of circumstances which might have arisen would have warranted the executors in keeping from Judge McLouth that which had been given him by Mr. Bickford. No matter what change in conditions might come to pass following Mr. Bickford's death, the value of all legal services required by the executors would have been the measure of the amount of his legacy, and could be recovered by him. If through lack of skill or error of judgment his advice to the executors had brought loss to the estate and convinced them that his advice could not be followed with safety to the estate or themselves, they would still be obliged to continue his employment, or else pay him the value of all services required, and employ another attorney at their own personal expense. Even if physical or mental incapacity had rendered it impossible for him to advise, or improper for the executors to follow his advice, his rights in the estate would be absolute, and could not be by the executors changed, or he deprived of the intended benefit. And, indeed, it might with equal force be claimed that, if death itself came to him, his estate should receive the amount intended for him by Mr. Bickford under the clause in question. One of these executors is himself an attorney at law, although not in active practice. If he had felt qualified and had conducted the legal business of the estate himself, without recourse to the advice of any other attorney, Judge McLouth would have still been entitled to recover from the estate payment for services he never rendered.

It seems as if the mere recital of these logical endings of the argument advanced in behalf of Judge McLouth must show the utter falsity of the foundation upon which it is builded. It may and should be said, however, that Mr. McLouth upon the hearing and argument frankly conceded that, if for any reason he was or had been incompetent, unwilling, or unable to continue, or at any time improperly in any manner performed his duties as attorney for or counsel to the executors, they would have had the right to discontinue the employment at once, and he challenged proof of any such act or thing, of which none was attempted to be given, nor any such condition suggested by the executors. On the other hand, if, notwithstanding this provision of the will, the executors have left in them any discretion whatsoever for the employment of some other attorney, so long as

same is honestly exercised, there can be no limitation upon their action in that regard. If one of these executors, as above suggested, could have deprived Judge McLouth from any participation in the estate by performing the legal services connected therewith himself, why can he not with equal legality deprive him from participation in the estate by employing some other person as his attorney? If Judge McLouth, by reason of bad advice, or mental or physical disability, had become an unsafe adviser and counselor, can there be any doubt of the right of these executors to employ attorneys elsewhere? And if they might exercise their discretion for either of those reasons, it follows irresistibly that the provision in question is not a trust, and did not create a beneficial interest in the estate in favor of Judge McLouth, and that they might exercise their discretion for any reason which seemed to them sufficient, though it was no better one than that they preferred to rely upon the judgment and advice of some other attorney.

Who is to say that one reason is sufficient, and another reason insufficient, to enable them to choose for themselves their legal adviser? They are responsible for his acts, whether he be the one named in the will or of their own selection, and are entitled to name him in whom they feel they can rely. A deliberate exercise of their strictly legal right under circumstances such as here exist may show a lack of proper respect for the dying wishes of their testator and constitute a violation of his confidence in them. It may not commend itself to the approval of those having cognizance of the facts. Nevertheless, so long as their action is in accord with their legal rights, this court cannot set it aside for purely ethical reasons.

The precise question here raised does not seem to have been passed upon by the courts of this state, but has in other jurisdictions, both in this country and England. In view of the position assumed by the claimant upon the presentation of this case, I have not here deemed those decisions of particular value as precedents, although they are in line with the conclusion reached by me from an entirely different course of reasoning, and are to be considered in the endeavor to give to this disputed clause of Mr. Bickford's will its legal effect, and carry out the intention which was in his mind when it was framed; for he, like other men, was presumed to know the law. The holding of these cases is stated very concisely and completely in the brief of the attorney for the executors as follows:

"An attorney is but the agent of the one who employs him, and when an executor employs an attorney he becomes responsible for his attorney's acts and personally liable to such attorney for his compensation. The executor employs him or not at his own discretion and risk, and for his own protection. Also, a still further extremely important and significant consideration lies in the universally recognized fact that, the relation of attorney and client being a peculiarly confidential one, it is very essential that the client's absolute freedom of choice in the selection of his attorney should in no wise be curtailed or obstructed, and under no circumstances should the desires, nor even the most positive directions, of a decedent be held to control his executors in the selection of their attorneys and legal advisers." Shaw v. Lawless, 5 Clk. 129; Finden v. Stevens, 2 Phillips, 142; Foster v. Elsley, L. R. 19 Ch. Div. 518; Young v. Alexander, 16 Lea (Tenn.) 108; In the Matter of Ogier's Estate, 101 Cal. 385, 35 Pac. 900, 40 Am. St. Rep. 61.

Construing, therefore, this will in its most favorable light for the claimant, it can only be said that Mr. Bickford intended his employ-ment to be continued so long as in the judgment of the executors such employment was for the benefit of the estate, and to compensate him for such services as he might, under the direction of the executors, actually render. It cannot, it seems to me, have been the intention of Mr. Bickford that he should have received payment for services never rendered. Summing the whole matter up, I am of the opinion that the clause in question is one merely of suggestion, and not of direc-tion or command, and did not create a trust. It follows, from the foregoing, that the executors were legally justified in the employment of Mr. Shuster, that their payments to him charged in their accounts should be allowed (no question as to the value of his services being made), and the claim of Charles McLouth disallowed.

Decree may be settled before me any Monday at Lyons, upon eight days' notice to all parties appearing.