## Felix's Estate

*Con T. McGregor,* for claimant.

*Mahlon E. Lewis* and *William J. Kenney* of *Stewart & Lewis,* for executors.

TENER, J., January 13, 1945.—H. Stewart Dunn, Esq., a member of the Allegheny County Bar, claims the sum of $6,474.53 from the estate of Otto F. Felix.

The facts are as follows:

In 1937 the Union Trust Company of Pittsburgh redrew a will for Otto F. Felix. This draft was, at the request of Mr. Felix, submitted to his attorney, Mr. Dunn. After Mr. Dunn had approved it the instrument was, on April 30, 1937, duly executed by Mr. Felix as his last will and was deposited with the trust company, one of the executors. The other executors were A. Kenneth Felix and Paul G. Felix, sons of the testator.

On March 25, 1938, at the request of Mr. Felix, Mr. Dunn wrote the following letter:

"Dear Mr. Felix:

"At our meeting the other day, in reference to legal services for the Union Trust Company and your two sons, whom you have appointed as Executors of your Last Will and Testament, you stated that you desired

I would represent them in the matters concerning your estate and that you had so directed notice to the Union Trust Company and the other executors.

"In accordance with our agreement, I wish to advise you that in the event your estate is in excess of $350,-000.00 my fee for services will be based at the rate of one and one-half per cent of the value of said estate.

[signed]   H. Stewart Dunn."

After noting the word "accepted" and the date "3/29/38" on the lower left-hand corner of the letter and signing his name "Otto F. Felix" below the notation, Mr. Felix delivered this letter to the trust company.

Previously, April 10, 1935, Mr. Felix had notified the Union Trust Company as follows:

"Gentlemen:

I have selected H. Stewart Dunn, Commonwealth Building, Pgh. as attorney in connection with my will of which you are executor and trustee.

Otto F. Felix."

Also, on February 1, 1936, Mr. Felix had delivered letters in his own handwriting to each of his sons. The letters were substantially similar and in envelopes marked "open after my death". The material portion of each is as follows:

"H. Stewart Dunn to act as attorney for my estate at 1½% as per verbal agreement his written proposition says 2% he will tell you why the difference."

It also appears that, on or about February 6, 1938, Mr. Felix delivered to his son A. Kenneth Felix a letter of instruction regarding his estate. This letter, which the recipient read and deposited in his safe deposit box where it remained, contains the same statement with respect to Mr. Dunn as the letters of February 1st, quoted above.

Neither son opened the envelope enclosing the letter of February 1st at the time it was delivered to him. One waited until after the death of his father, on De-

cember 8, 1942, the other until 1939, when his father advised him that the letter was no longer in force. He then read and destroyed the letter delivered to him.

The probated will was prepared by counsel now appearing for the estate. It was executed July 24, 1939. Concerning it counsel wrote Mr. Felix the same day as follows:

"I hand you herewith an executed duplicate original of your Last Will and Testament, dated July 24, 1939, which I have prepared in accordance with your request.

"Please be advised that in handling your estate my charges will not exceed the charges established by the Allegheny County Bar Association for the handling of estates, said charges being set forth in the Minimum Fee Bill adopted May 25, 1934.

Yours etc."

Upon this letter Mr. Felix signed his name "Otto F. Felix" under the typewritten word "accepted". On the same day Mr. Felix acknowledged receipt from the Union Trust Company of the will dated April 30, 1937, the "will dated July 24, 1939 having been deposited to take the place of said Will".

None of the parties in interest nor the executors had any objection to the employment of Mr. Dunn as counsel for the estate, and he was ready and willing to act for them.

The inventory value of the estate is $400,689.36.

The status of attorney and client is based upon mutual trust and confidence. It is a relationship at once personal, reciprocal, and confidential; and it must necessarily be so. No third person can create it between nor impose it upon two other persons. It must be entered into freely, fairly, and advisedly by the attorney and the client: Schafer's Estate, 39 Pa. Superior Ct. 384, 387; A. L. I. Restatement of the Law of Trusts §126(b).

If, for the sake of the argument, it be conceded that Mr. Felix and Mr. Dunn made an arrangement which

meets every requirement of the law of contracts, the effect of the arrangement, if it is to be enforced, is to create as between Mr. Dunn and the executors of the estate of Mr. Felix the status of attorney and client. It would place the executors in a position in which they must either accept the proffered services of counsel selected for them or they must suffer the assets of the estate to be disbursed by way of damages for breach by them of an express contract for professional services which they did not make.

It is clear that no testator can by a direction in his will bind his executors in the selection of their counsel: In re Caldwell et al., 188 N. Y. 115, 121; 33 C. J. S. 1212; 21 Am. Jur. 502, §232. What he may not do directly he cannot by the device of a contract do indirectly: Sundheim v. Beaver Co. B. & L. Assn. et al., 140 Pa. Superior Ct. 529; Katz's Estate, 28 D. & C. 593.

Too frequently it happens—this may be one such case—that a lawyer spends long hours of devoted service to the interests of his client, for which he receives little or no remuneration, in the expectation encouraged by the client that to him will be entrusted the settlement of the client's estate when he shall receive compensation commensurate with the value of the services rendered. Death occurs and the lawyer is met either by a refusal of the executor named in the will which he drew to employ him or, as here, by a subsequent will drawn or approved by other counsel who, merely because of those circumstances, is employed by the executors. The somewhat cynical comment that in not insisting upon payment for his services when and as often as rendered the lawyer failed to regard his own interests hardly meets the situation. Undoubtedly Mr. Dunn believed that Mr. Felix desired that he should represent the estate. But, in the circumstances here disclosed, there is no protection for him under any authority brought to the attention of or discovered by the court.

In compliance with the principles of law which it is believed are controlling, the claim of Mr. Dunn will be disallowed.