STATE EX REL. SEIFERT, JOHNSON & HAND
v. OLE E. SMITH AND OTHERS.

110 N. W. (2d) 159.

July 7, 1961—No. 38,247.

*Seifert, Johnson & Hand,* pro se, for appellants.
*John S. Ruenitz,* for respondents.

NELSON, JUSTICE.

This is an appeal from an order of the Cottonwood County District Court denying relators' motion for amended findings or for a new trial. It involves the interpretation of a paragraph of the last will of John E. Esser, decedent, which reads as follows:

"SIXTH: I direct that my executor and executrix employ Seifert, Johnson & Hand, Fairmont, Minnesota, as attorneys in the probating of this estate."

The probate court refused to direct the executor and executrix to comply with this provision, and relators brought certiorari in the district court, claiming that where testator in his will directs that the executor must employ a certain lawyer in the probating of his estate such direction is mandatory. The court below held that such a provision is merely directory. The sole question therefore presented in this court is whether an executor is required to follow a specific direction of the testator that he employ named attorneys in probating the estate where the evidence shows said attorneys are competent, qualified, and willing to act.

The facts surrounding the preparation and execution of the will are not in dispute. Relators state them as follows:

Decedent died on November 19, 1959, at the age of 76 years, leaving a last will and testament which was executed by him on April 7, 1958. This will was admitted to probate on April 4, 1960.

The will was drawn by Leo J. Seifert of the firm of Seifert, Johnson & Hand, Fairmont, Minnesota. Seifert had been acquainted with decedent for about three or four years prior to the time the will was drawn, and decedent had come to his office three or four times to talk to Seifert about making a will. At the time of making the will and at previous times decedent told Seifert that some people in Windom thought that he was crazy. He said also that he did not care so much for the husband of his daughter Lorayne O'Neill and that he wanted to protect her from him. He named Ole E. Smith and his wife, Peggy Jane Smith, to be executor and executrix. He advised Seifert that he didn't want anybody to change this will and that he did not want any other lawyer except Seifert or his firm to probate his estate and represent the executor and executrix. Seifert advised him that if he wanted Seifert or his firm to handle the legal end of the estate he would have to give directions to that effect in the will. The paragraph so directing has been set out above.

Respondents assert that the foregoing statement of facts largely reflects the transactions surrounding the execution of the will and includes evidence excluded by the probate court. The record is not clear as to what specific evidence was excluded by the probate court, and in any event respondents have argued on the basis of the facts as stated here.

Relators cite the following cases as controlling: Rivet v. Battistella, 167 La. 766, 120 So. 289; In re Estate of Crosby, 218 Minn. 149, 15 N. W. (2d) 501; Estate of Ogg, 262 Wis. 181, 54 N. W. (2d) 175.

The Rivet case is the only one cited which holds that a designation of an attorney in the will is binding and entirely within the rights of the testator. This rule, however, is supported in Louisiana by statutory law of long standing, namely, Acts of La. 1902, Act No. 45 (now La. Rev. Stat. 1950, 6:322[6]), which provided:

"* * * banks may be appointed * * * executor * * *; * * * the designation in any will of an attorney to the succession, or the selection of an attorney by the surviving spouse, or heirs shall be binding upon such bank."

Louisiana has a similar statutory provision that a designation in a trust instrument of an attorney "to handle legal matters for the trust" shall be binding on the trustee and beneficiary. La. Rev. Stat. 1950, 9:2212. The Rivet case is cited in Succession of Pope, 230 La. 1049, 1056, 89 So. (2d) 894, 897, as holding:

"* * * while the executors are not required to use the services of the attorney, the estate is liable to him for a reasonable fee."

Such rule finds no support by statute or court decisions in this state.

In re Estate of Crosby, *supra,* did not deal with the issue in this case. There the testator named one James W. Hunt executor and also requested (218 Minn. 151, 15 N. W. [2d] 503) "that the said James W. Hunt * * * designate some person to act as executor * * * in the case of his own death or disability." The will further provided (218 Minn. 152, 15 N. W. [2d] 503):

"If the said James W. Hunt shall make no such designation, or if the person so chosen by him shall not act, I desire that The First and American National Bank of Duluth shall be appointed by the proper court as such executor * * * to succeed the same James W. Hunt."

Hunt did not qualify as executor but instead formally relinquished his right to act requesting (218 Minn. 152, 15 N. W. [2d] 504) "that the Court appoint the First and American National Bank of Duluth as

the executor of said will in compliance with the provision of said will naming said bank as executor in my stead in case of my disability to act as such." The case, therefore, concerns itself with the interpretation of that clause in the will and the determination of the "suitability" of a person to act as executor of a will, and this court held that to be a question committed to the sound and discerning judgment of the appointing court, to be exercised in favor of the testator's choice if he appears to have the qualities necessary to discharge the trust with fidelity, prudence, and promptness, having regard for the special conditions of each estate and those interested in it as creditors, legatees, and next of kin. As was stated in the Crosby case, the right of a particular person to act as executor of a will is, under our statute, dependent upon his being "named" as such in the will, assuming of course, that he is qualified and suitable. A testator may delegate the naming of an executor to a third person. See, 21 Am. Jur., Executors and Administrators, §§ 56, 57.

Minn. St. 525.25 provides in part:

"* * * If any executor named in the will is found by the court to be suitable and competent to discharge the trust, he shall be appointed."

The only reference in the Crosby case to retaining an attorney for the estate is found in the closing paragraphs of the opinion which read as follows (218 Minn. 157, 15 N. W. [2d] 506):

" 'Unsuitability,' to quote from the trial court's memorandum, 'is claimed to arise out of [1] the unfriendly relations between the Crosby sons, who are beneficiaries, and Mr. Hunt, whom the bank had indicated it would retain as its attorney, if appointed, and [2] the fact that the administration of the estate has been largely completed by the special administrator, whom the beneficiaries seek to have appointed administrator with the will annexed.'

"The trial court gave careful consideration to the claim so urged and properly recognized both contentions as having 'some, but not controlling, force.' It also expressed its opinion that, 'If I felt that it were a matter of discretion, unaffected by the testator's wishes, I would appoint the Northern National Bank as administrator with the will

annexed.' However, it reached the conclusion that the First and American National Bank was not 'unsuitable,' and accordingly appointed that bank. That conclusion, based on adequate evidence, cannot be disturbed here."

While relators put some stress on Estate of Ogg, *supra*, in support of their contentions, that case is clearly distinguishable and when considered with Estate of Braasch, 274 Wis. 569, 80 N. W. (2d) 759, it becomes quite clear that the Ogg case furnishes no rule beyond the special situation there involved. In the Ogg case the will named no executor although a bank was named as trustee of trusts created by the will. The will declared it to be the testator's "express desire" that the executor and trustee employ a certain lawyer, explaining that the lawyer had an intimate knowledge of testator's affairs and wishes. The bank was appointed administrator with the will annexed. Testator's next of kin asserted her right under Wis. St. 310.25 to name the attorney for the estate, there being a corporate administrator. The administrator petitioned for instructions stating that it was willing to retain either the attorney named in the will or the attorney named by the next of kin. The court decided that the administrator should be instructed to retain the attorney named in the will, giving considerable weight to the following facts: (1) The will expressed sound reasons for naming the particular attorney; (2) the will did not name an executor; (3) the administrator was willing to employ the attorney named in the will. In the Ogg case the conflict was between the wishes of the testator expressed in the will and the wishes of the next of kin who had certain rights under the statute, which was applicable only where a firm or corporation was administrator or executor and, by its terms, inapplicable when good cause was shown to the contrary. In the Braasch case the Wisconsin court said (274 Wis. 571, 80 N. W. [2d] 760):

"Unlike the Ogg will, the will now before the court expressed no reasons for the testatrix's selection of counsel; the will named the executor; and the executor was unwilling to retain the attorney named in the will."

The same court in the Braasch case makes the following statement (274 Wis. 572, 80 N. W. [2d] 760):

"The majority rule (in all states where the question has been decided, except Louisiana) is that a testamentary request or designation of an attorney to represent the executor does not bind the executor. Cases cited at 166 A. L. R. 491, discussed in Estate of Ogg, *supra,* page 189."

The courts following the majority rule generally state in support of it that the executor is entitled to his choice of counsel because he is responsible for any dereliction or negligence on the part of his counsel and because of the confidential character of the relationship between attorney and client. To the contrary, of course, it has been suggested that if the executor is dissatisfied with the attorney chosen by the testator he can decline to act, but it can also be argued in support of the rule that if the testator wants to be certain that his selection of counsel will be recognized he may do so by bringing the designated counsel and executor together and exacting an agreement on the duties each is to perform in probating his will. It is clear that if a testator has named an executor and directed him to retain a particular attorney the testator's wishes are necessarily thwarted to some degree if either one of them is unwilling to act with the other. The court in disposing of that question in the Braasch case said (274 Wis. 572, 80 N. W. [2d] 761):

"The function performed by an executor under a will is of great importance and the confidence reposed in him by the testator is of similar extent. Early commentaries suggested that a will in which no executor was named was not sufficient as a testament. An instrument executed as a will is one even though it does nothing except to appoint an executor. * * * Historically the attorney for the executor was by no means so essential. While an executor has the right to employ an attorney even where the will does not say so, such authority is limited to the extent to which legal services are needed. * * * An attorney's claim for services is normally against the executor or administrator, and the court allows some or all of a fee paid or incurred only as a credit on the account. * * *

"Because of the essential character of the function of the executor, and the gravity of the trust reposed in him, and because the attorney does not act independently, but advises and renders professional services to the executor, we reach the conclusion that the intent expressed in the Braasch will was that Robert should serve as executor even though unwilling to retain the attorney named.

"The question was argued before us whether the word 'request' should be interpreted as the equivalent of the word 'direct' or some similar term literally more mandatory than 'request.' We do not base our conclusion upon this choice of words. In proper context words indicating a wish, desire, or request have frequently been held to convey a testamentary intent. * * * But we cannot say that the Braasch will expresses an intent that the executor must either employ a particular attorney or decline to act as executor."

In effect the court in the Braasch case held that a testamentary designation of an attorney to represent the executor does not bind the executor.

Estate of Ogier, 101 Cal. 381, 383, 35 P. 900, 901, 40 A. S. R. 61, held that no obligation to employ the person named was imposed by a provision in the will reading as follows:

"I hereby select as the attorney of my estate John W. Mitchell, and direct my executrix to consult and employ him in all matters pertaining to the distribution of my estate, and the requirements of this my last will."

It is uniformly held that a recommendation in a will that a certain person be employed, or continued in employment, creates no obligation. The Superior Court of New Jersey in Carton v. Borden, 14 N. J. Super. 308, 81 A. (2d) 818, states that by the great weight of authority such a provision is against public policy and does not create a beneficial interest in the estate in favor of the named attorneys. The decision further says that the court will not commit a trust to one person and then require him to accept the services of an attorney, the relationship between attorneys and clients being too personal. The court made the following statement (14 N. J. Super. 313, 81 A. [2d] 820):

"The law of the State of New York does not recognize any testamentary power to control executors in the choice of an attorney or counsel who shall act for them in their representative capacity. They may incur a personal liability for the conduct of their lawyers, and hence they are beyond the control of their testator in making the selection. Such a provision, therefore, as this will contains in reference to the attorney to be employed, is to be regarded merely as an expression of a wish on the part of the testator which it is most proper for the executors to observe, if it accords with their own judgment but which otherwise they are not bound to regard. In re Caldwell, 188 N. Y. 115, 80 N. E. 663 (Sup. Ct. 1907). Such a provision is not a trust and did not create a beneficial interest in the estate in favor of the named attorney; the clause is merely one of suggestion and not of direction or command. In re Thistlethwaite, 104 N. Y. Supp. 264 (Surrog. Ct. 1907). So strongly is this trend of the authorities, even though there be some to the contrary, that the rule is laid down in American and English Encyclopedia of Law (2d ed.), vol. 11, p. 1241, that 'The right of the executor to select the attorney whom he would employ in the affairs of the estate cannot be controlled, even by the will of the decedent.' In re Wallach, 150 N. Y. Supp. 302 (App. Div. 1914), affirmed 215 N. Y. 622 (Ct. of App. 1915), citing authorities. Cf. 21 Am. Jur. 502."

See, Annotations, 49 A. L. R. 102, 107 A. L. R. 924, and 166 A. L. R. 491; and In re Lachmund's Estate, 179 Ore. 420, 170 P. (2d) 748, 166 A. L. R. 479, the majority rule being set forth in the latter case.

In State ex rel. Nordin v. Probate Court, 200 Minn. 167, 273 N. W. 636, an administratrix filed her final account in the probate court asking a certain sum for attorneys' fees. Objections to the amount were filed, the dispute was referred to a referee, and his findings were adopted by the court, which then made its order allowing the account. No appeal was taken from this order, and the attorney petitioned the district court for a writ of certiorari to review it. Subsequently the district court ordered the writ quashed, and the attorney appealed from that order. We held that the proceedings in the probate court were

between the administratrix on the one hand and the objectors on the other and that the attorney for the administratrix was not a party to them. The petition of the administratrix was that an allowance be made to her, not to the appellant, of a sum for attorneys' fees. The sum allowed was to her, and not to the appellant, the proceedings having been pursuant to Mason St. 1936 Supp. § 8992-118 (L. 1935, c. 72, § 118). That statute provided for compensation for the representative's services *"and those of his attorneys* as the court shall deem just and reasonable * * *."* (Italics supplied.) Under that wording the allowance made by the probate court was to the representative, as such, and not to the attorney.

We stated in the Nordin case that under similar statutes it has been held that the representative only and not the attorney has a right of review. This court did not pass upon whether the probate court had jurisdiction in any case to determine the amount of attorneys' fees as between the representative and the attorney, nor upon the effect of the order allowing the final account on the rights and remedies which the appellant would have against the representative to recover any fees which he might claim in excess of the amount allowed to the representative for his services. The court said that those questions were not before it because the appellant was not entitled to a review of those proceedings.

In State ex rel. Larson v. Probate Court, 204 Minn. 5, 283 N. W. 545, the same statute was involved and the majority of the court ruled that the representative of an estate in the performance of his official duties was authorized to retain the services of attorneys and to incur reasonable expenses in that regard, the allowance, however, being to the representative as such and not to the attorney. Mr. Justice Stone dissented in the Larson case and Mr. Chief Justice Gallagher joined in that dissent. In the Larson case it was argued that in case of a disagreement between the representative and his attorney as to the amount of the fee the former (204 Minn. 15, 283 N. W. 550) "may be placed in a position where if he has paid his attorney the amount fixed by the probate court he may yet be sued in the district court for a claimed balance." This court rejected this argument as untenable, but it may well have prompted the enactment of L. 1939, c.

270, § 6 (now part of Minn. St. 525.49), which provides that a representative of an estate shall be allowed compensation only for his services and that "[a]n attorney performing services for the estate at the instance of the representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable." The statute as amended is similar to laws of other states which are held to give authority to the probate court to make an allowance which is binding upon both the representative and attorney. The matter of determining the reasonable value of the services will be submitted to the sound discretion of the court hearing the case.

Minn. St. 525.25 provides in part:

"* * * If any executor named in the will is found by the court to be suitable and competent to discharge the trust he shall be appointed."

This would indicate that if the court so finds, the appointment of the executor named in the will becomes mandatory. See, Bloor v. Myerscaugh, 45 Minn. 29, 47 N. W. 311; In re Estate of Betts, 185 Minn. 627, 240 N. W. 904, 243 N. W. 58; In re Estate of Crosby, 218 Minn. 149, 15 N. W. (2d) 501; Hayes v. Pratt, 147 U. S. 557, 13 S. Ct. 503, 37 L. ed. 279.

Relators contend that the 1939 amendment referred to, which further provides that upon payment by the representative of the whole amount allowed the attorney the representative shall be fully released and discharged from all liability on account of the attorney's services, changes the rule in the Larson case. They also point out that the attorney for the estate now has the right under § 525.71(15) to appeal in his own name from an order refusing to direct payment of fees to him. They claim that these provisions support their conclusion that if the attorney which the testator has selected is suitable and competent, the testator's choice ought to be mandatory upon the court. However, there is nothing in these provisions that would indicate that the legislature intended such to be the rule. Nor do we find anything in the decisions of this court indicating that it has questioned the wisdom of the majority rule that a testamentary request or designation of an attorney to represent the executor does not bind the executor. The only authority to the contrary is found in the decisions of the Louisiana

court heretofore discussed, and the opinion in Rivet v. Battistella, *supra*, clearly indicates that there was statutory authority for their rule. We think that if such rule is to be adopted in Minnesota in place of the well-established majority rule it should come about by statutory enactment.

In Highfield v. Bozio, 188 Cal. 727, 207 P. 242, an attorney petitioned the California Supreme Court for a writ of mandate to compel the superior court to direct the executor to employ petitioner pursuant to a provision of the will involved which stated:

"I direct and specially request, that my friend of many years Frank Highfield be the attorney of record and for the estate in the matter of probating my estate."

The petition was denied, following Estate of Ogier, *supra*. One of the reasons given for the court's decision in that case was that the allowance for attorneys' fee could be made only to the executor, and in the Highfield case the attorney-petitioner claimed that an amendment to California Code of Civil Procedure, § 1616, passed subsequent to the Ogier decision, changed the rule of that case. The amendment, Statutes of California, 1905, c. 577, § 1, provided in part:

"* * * Any attorney who has rendered services to an executor or administrator may * * * apply to the court for an allowance to himself of compensation therefor * * *."

This provision in substance is now found in Probate Code of California, § 911. It must be admitted that the change in the California statute is quite similar to the 1939 Minnesota amendment.

It was held in the Highfield case that amending the foregoing California statute as was done did not purport to take away the authority of the executor or administrator to select and employ an attorney to advise and assist him in the administration of the estate, nor did it purport to regulate or affect in any manner the exercise of that authority or power. The California court went on to say that the amendment did not affect the principal reasons upon which the decision in the Ogier case was predicated nor change the sound policy on which it rests, pointing out that the executor still is responsible for the mis-

conduct, negligence, or want of skill of the attorney and should therefore be allowed, notwithstanding that amendment, to make his own selection of attorney and should not be bound by any direction contained in the will. It followed the ruling in the Ogier case to the effect that (188 Cal. 728, 207 P. 242):

"* * * 'if the attorney employed should be derelict in his duty, and should receive and misappropriate funds of the estate, the executor would be liable therefor to the legatees under the will. This being so, it would seem to be neither reasonable nor right to hold that the executor of a will must necessarily accept the services of an attorney selected by the testator.' "

We think that the ruling in the Highfield case is reasonable and ought to be applied in interpreting the effect of L. 1939, c. 270, § 6.

The Oregon court in In re Lachmund's Estate, *supra,* referred to the peculiar nature of the relationship of attorney and client and said that the provision of a will directing that plaintiff be selected as attorney for the executors and the estate must be considered in the light of the legal rules which control the ordinary relationship and reciprocal duties of attorneys and their clients, and especially the relationship of attorneys employed in the administration of estates of deceased persons. The court said (179 Ore. 429, 170 P. [2d] 752, 166 A. L. R. 485):

"* * * The relation of attorney and client is one of extreme personal trust and confidence; and 'in view both of the delicate and confidential nature of the relation between them and of the evil engendered by friction or distrust,' 5 Am. Jur. 281, the authorities generally recognize that the client has the power, as distinguished from the right, to terminate the relation at will with or without cause, and even when the discharge constitutes a breach of contract. The rule has been stated as follows:

" '* * * Because of the peculiar nature of the relation of attorney and client, the law goes even further and permits the termination thereof in a manner not recognized with respect to other contracts. Either party may dissolve the relation for cause; and the client has the absolute right to discharge the attorney and terminate the relation at any time even without cause, no matter how arbitrary his action may

seem, although the question of whether the revocation or termination was with or without cause may have a material bearing on the client's liability for fees or damages.' [Citing authorities.]"

This court has also recognized that a contract between attorney and client differs from the ordinary contract of employment. Lawler v. Dunn, 145 Minn. 281, 176 N. W. 989; Meagher v. Kavli, 251 Minn. 477, 88 N. W. (2d) 871.

Relators have indicated in their brief that the facts in this case suggest the existence of a contractual relationship which is compelling. The views expressed in the foregoing cases would hardly support this contention. It is universally recognized that because of its peculiar nature this relationship may be terminated in a manner not permitted with respect to other contracts.

Since the basic responsibility for administration of an estate must rest with the executor and since he is recognized as the official champion of the testator's will, he must necessarily have control of his agents and attorneys and the power to select them unless by statute otherwise provided.

While admittedly relators, in the instant case, are perfectly competent and suitable to handle the probating of any will, we nevertheless are of the opinion that an executor should not be forced against his will to employ an attorney upon whose judgment he does not wish to depend and whose advice he feels he cannot follow with confidence. Since the relationship of attorney and client is a confidential one, it must of necessity be based on mutual trust. Forcing such relationship upon the client against his will would not be conducive to an atmosphere of reciprocal confidence.[1]

We are persuaded that the majority view is founded on the better reasoning and we adopt that view.

Affirmed.

---

[1]See, Matter of Blauaug, 193 Misc. 744, 85 N. Y. S. (2d) 45; Brodie v. Watkins, 33 Ark. 545, 34 Am. R. 49; Chancey v. West, 266 Ala. 314, 96 So. (2d) 457; Conlan v. Sullivan, 280 Ill. App. 332; Felix's Estate, 52 Pa. D. & C. 37; In re Marks' Estate (Fla.) 83 So. (2d) 853; In re Sherman's Estate, 9 Misc. (2d) 731, 104 N. Y. S. (2d) 988; In re Stahl's Estate, 113 Ind. App. 29, 44 N. E. (2d) 529; 21 Am. Jur., Executors and Administrators, § 232; 33 C. J. S., Executors and Administrators, § 223.