LILLYAN M. SPAFFORD, Plaintiff, *v.* LUCILLE S. PFEFFER et al., Defendants.

Supreme Court, Putnam County, January 20, 1943.

*Neil P. Cullom* for plaintiff.

*Bleakley, Platt & Walker* for Lucille S. Pfeffer, defendant.

PATTERSON, J. At the end of the plaintiff's case, defendant moved to dismiss the complaint, upon which motion the court reserved decision, after which the defendant went forward with her proof. The action was brought to set aside a claimed fictitious and illusory conveyance of certain real property of substantial value made by the plaintiff's husband, now deceased, to the defendant Pfeffer, his daughter.

It is the position of the plaintiff that the conveyance was without consideration, and solely for the purpose of depriving

the plaintiff of her rights under the Decedent Estate Law [§ 18]. In other words, that the conveyance was intended as a mask for the practical retention by deceased of the property, which in form he had conveyed. Plaintiff asks that the conveyance to the defendant be adjudged void, illusory and fraudulent, and that the defendant Pfeffer be directed to deliver the same to the defendant-administratrix for disposition in accordance with the intestacy laws of this State.

The complaint alleges that the plaintiff's husband died intestate in November, 1941, leaving the plaintiff his lawful widow. That prior to September, 1939, the deceased husband was the owner in fee simple of an estate located in Putnam County, known as 8 Bells Farm. That the plaintiff and her husband had marital difficulties, and began to live separate and apart commencing some time in September, 1939. The difficulties culminated in November, 1939, in the institution of a suit by the plaintiff for a separation. This suit was never tried, because of the death of the husband.

The sole issue in the case is whether the conveyance of the property in question was intended by the parties thereto to take effect upon the grantor's death and was in truth a testamentary disposition made solely for the purpose of defeating the widow's rights. In other words, was there a mental reservation that he should retain dominion and control over the property. To substantiate the plaintiff's contention, that the conveyance was illusory, is the following:

*First.* That the property was posted bearing the name of the decedent as owner, but it is conceded that these signs were posted prior to the time of the conveyance.

*Second.* That the telephone in the house on the premises was listed in the name of the decedent subsequent to the time of the conveyance. The decedent continued to reside on the premises subsquent to the time of the conveyance, and this listing is not significant of much more than establishing a residence or tenancy on the premises owned by the defendant Pfeffer, who was only intermittently on the property in the years 1940 and 1941.

*Third.* That subsequent to the time of the conveyance, the decedent received bills pertaining to the operation and maintenance of the farm, addressed to him.

*Fourth.* That on sundry occasions the decedent invited and entertained guests at the farm.

*Fifth.* The decedent in conversations and by letters referred to the farm as " my farm " or " my place " subsequent to the time of the conveyance.

*Sixth.* That subsequent to the time of the conveyance, the decedent gave instructions to one Taylor, the superintendent, concerning the operation and maintenance of the farm.

This about represents the sum total of the evidence introduced by the plaintiff in support of her complaint. The complaint alleges that on or about September 20, 1939, said Edward E. Spafford entered into an agreement with the defendant Lucille Spafford Pfeffer providing for the apparent conveyance of said real property to the defendant Pfeffer, so that he would not die seized thereof and plaintiff would thereby be deprived of her rights therein under the Decedent Estate Law of the State of New York, retaining to himself all the benefits and rights of actual ownership and possession. The complaint seems to be constructed around the allegation of the existence of such an agreement, but there is not a scintilla of evidence offered by the plaintiff which shows the existence of any express agreement between the decedent and his daughter at the time of the conveyance. But I do not think, notwithstanding the allegation of the complaint, that it was incumbent upon the plaintiff to prove that upon a precise date at a designated time the decedent and the defendant met and arranged the conveyance for the purpose of depriving the plaintiff of her rights. An alleged fraudulent conveyance is to be determined by the circumstances surrounding the parties at the time it took place. Plaintiff was only required to introduce the proof of the ultimate facts from which the court may conclude that the conveyance was fraudulent. Fraud may be imputable from the actions themselves.

As against this evidence of the plaintiff to establish the illusory nature of the conveyance, there is the deed itself absolute on its face and containing no reservations. It complies in all respects with the provisions of the Real Property Law. It was executed, delivered and recorded. The defendant showed by uncontradicted evidence that at the time of the conveyance to her, she paid by her own checks from her own funds not only the operating expenses of the farm such as feed bills and other farm expenses, but also that she paid by the same means capital expenditures such as taxes, interest, and amortization of the mortgage existing upon the farm. The evidence further shows payments by her of major improvements on the property, such as the construction of a barn and additions to barns and silos. That the wages of the farmhands and superintendent were paid by her directly from her own funds. That where the decedent had advanced money for the purchase of farm implements for

use on the farm, the defendant Pfeffer had reimbursed him for such advances. That during the year 1940 alone, the total payments made by the defendant Pfeffer for wages and miscellaneous expenses in the conduct of the farm exceeded the sum of $14,000. In the years following the conveyance, similar expenses ran to approximately the same amount. The total of these expenditures by the defendant Pfeffer since the time of the conveyance for the maintenance, improvement and operation of the farm would appear to aggregate about $150,000. It would seem that these very substantial expenditures are hardly consistent with an illusory conveyance. Further, the defendant Pfeffer introduced evidence of conversations among the decedent, and the defendant Pfeffer, and her husband, and one Glenn, her business adviser, the substance of which was that the decedent admitted that the ownership of the farm was in the defendant Pfeffer, and not in himself, and that he had relinquished operation of the farm to the defendant Pfeffer, his daughter, and her husband.

There is certainly as much evidence to support the conclusion that after the conveyance the defendant Pfeffer exercised sole and complete dominion over the property, as there is that the control and beneficial use of it had been retained by the decedent after his conveyance to his daughter. My attention has been called to no case where a conveyance absolute on its face has been set aside as illusory. There are frequent instances where such conveyances were held to be illusory, where the decedent reserved to himself the right to alter or revoke the conveyance or retain some beneficial interest in the property.

Both sides cite the authority of *Newman* v. *Dore* (275 N. Y. 371) in support of their respective claims, but there the decedent reserved substantially the same rights to enjoy and control the disposition of the property as he previously had possessed, the court saying: " Judged by the substance, not by the form, the testator's conveyance is illusory, intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed." The simple test seems to be whether the husband did in good faith divest himself of ownership of his property, or made merely an illusory transfer. (See *Krause* v. *Krause,* 285 N. Y. 27.)

It seems to me that the gist of the decisions is that a cause of action by a surviving spouse to set aside a transfer or conveyance made by a decedent in his lifetime cannot be maintained unless the decedent did not make an absolute transfer, but reserved the right to alter or revoke the rights granted

under the transfer or conveyance. Here the effect of the conveyance was to vest complete ownership in the defendant Pfeffer. The result of the conveyance was that she could have conveyed the premises to a third party, or exercised any or all rights of seizin over the premises, without violating any agreement with the decedent. The decedent could not successfully alter or destroy the ownership of the defendant Pfeffer. It was a complete transaction in itself without exception or reservation, nor would intent of the decedent to deprive his wife of her rights under the Decedent Estate Law be sufficient to prove the conveyance illusory. Such intent is immaterial to the cause of action here asserted. (See *Newman* v. *Dore, supra; Inda* v. *Inda,* 288 N. Y. 315.) In other words, a husband may legally deprive his wife of her rights under the Decedent Estate Law if he absolutely divests himself of the property conveyed in compliance with the requirements of law. As the court said in *Krause* v. *Krause (supra)*: " ' * * * It is, therefore, apparent, that the fraudulent intent which will defeat the gift *inter vivos* cannot be predicated of the husband's intent to deprive the wife of her distributive share as widow.' " It is my opinion that the plaintiff failed to establish by competent and sufficient testimony that the conveyance in question was illusory, and that the decedent thereby intended to enjoy the fruits of ownership during his lifetime. The evidence well establishes the fact that whether or not the decedent intended to deprive his wife of her rights under the Decedent Estate Law, the conveyance of the property to the defendant Pfeffer was absolute, and he thereby divested himself of all control and dominion over it.

Judgment is directed dismissing the complaint.