In the Matter of the Estate of ANNA REICH, Formerly ANNA FEILER, Deceased.

Surrogate's Court, Kings County, February 27, 1933.

*Blum & Holles*, for the petitioner.

*Carl D. Isaacs*, for Morris Feiler.

WINGATE, S. The question of law raised by this application is one of more than passing interest and involves the rights of the beneficiary of a so-called " Totten " savings bank trust which was not revoked by the decedent in her lifetime or by will, where the assets of the estate are insufficient to pay the debts and funeral expenses of the decedent.

On November 12, 1928, the decedent opened a savings account in the Union Square Savings Bank in her name " in trust for Pearl Siegelbaum." The initial deposit was of $725. Only one additional sum was turned over to the bank by her, this being of $90.92 on February 21, 1930. Interest to a total of $118.27 was, from time to time, credited to the account, giving an aggregate of credits of $933.79. Against this, she drew six drafts to a total of $209.79, the balance in the account on January 1, 1933, amounting to $724.20. The first of these drafts was dated December 20, 1928, and the last, April 16, 1930. She died on January 19, 1931, and letters of administration were issued to the respondent by this court on the thirtieth of the same month. The savings bank book (No. 202,343) is now in his possession.

The respondent for reasons best known to himself, but which are wholly alien to the law and procedure of this court, has seen fit to attempt the injection into the issues of various procedural and jurisdictional questions which have no merit whatsoever. The cases

which he cites in support of his contentions may possess a certain antiquarian interest, but have not represented the law of this State for almost a score of years. The following cases represent the present law: *Matter of Wilson* (252 N. Y. 155); *Matter of Akin* (248 id. 202); *Matter of Raymond* v. *Davis* (Id. 67); *Matter of Cook* (244 id. 63); *Matter of Ashner* (231 App. Div. 127); *MacLean* v. *Hart* (228 id. 379); *Matter of Buckler* (227 id. 146); *Matter of Seaman* (205 id. 681); *Matter of Van Buren* v. *Decker* (204 id. 138); *Matter of Coombs* (185 id. 312); *Matter of Beach* (122 Misc. 261; affd., 208 App. Div. 831); *Matter of Kirkman* (143 Misc. 343); *Matter of Welton* (141 id. 674; *Matter of Pulitzer* (139 id. 575); *Matter of McCarthy* (Id. 147); *Matter of Frame* (128 id. 788); *Matter of Haigh* (125 id. 365); *Matter of Morris* (134 id. 374). In the last cited case this court traced the development of the jurisdiction over decedents' estates in the State of New York from the earliest Dutch settlements to the present time, deducing from the authorities cited (p. 382) that under the law as at present existing, " the Surrogates' Courts now possess entirely unlimited jurisdiction over any and every legal and equitable question which may ever arise in connection with decedents' estates * * * so far as it concerns any person actually or constructively before the court by reason of any right in, claim to, or obligation in connection with, a decedent's * * * estate."

In the present case this fiduciary, appointed by this court, admittedly has in his possession the indicia of ownership of a chose in action which was the property of the decedent at the time of her death. The right to its possession is claimed by another. The determination of this issue is peculiarly within the province of this court.

Approaching a decision on the merits, neither the diligence of counsel nor the independent research of the court has disclosed any precedent in the courts of this State which has passed upon the precise situation here disclosed, although a decision by Deputy Commissioner COLE in *Matter of Computation of Transfer Tax on Trust Funds Deposited in Savings Banks* (33 State Dept. Rep. 22) bears a close relation thereto, and *Beakes Dairy Co.* v. *Berns* (128 App. Div. 137), decided by the Second Department in 1908, is decisive as to one portion of the problem presented.

In this, as in other questions relating to savings bank trusts, the natural starting point of the discussion is the decision of the Court of Appeals in *Matter of Totten* (179 N. Y. 112), which has been cited and analyzed times without number in the opinions on related questions by this and other courts.

Its oft-repeated declaration respecting the effects produced by

such a transaction reads (p. 125): " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

While this is the unquestionable law of the State of New York relating to this subject, candor compels the concession that it amounts to a judicial addition to the mode permitted by section 21 of the Decedent Estate Law for the transmission of property on death. This is not said in disparagement of the rule, since its enunciation is but another evidence of the attempt of the courts to conform the law to the customs of the community. The mere fact that the presumption of trust is created only in respect to the balance on hand in the account at the death of the depositor, demonstrates that the theory of the decision is that the " trust " springs into being only at the moment of his death. The alternative result would establish the existence of the trust from the moment of the original deposit, consequently making the depositor or his estate liable for any moneys withdrawn by him during his lifetime, which, under ordinary circumstances, is not the case. (*Matter of Totten, supra.*) Since any advantage to the tentative beneficiary is to take effect only on the death of the owner of the fund and the possibility of such benefit is revocable up to the moment of death, there is presented an obvious exception to the rule implied in *Gilman* v. *McArdle* (99 N. Y. 451, 461) that, for such a transfer, the owner is limited to a testamentary direction.

In essence it is a legally authorized manner of disposition of the decedent's effects on death to the extent of the property embraced in the account at the time the death occurs in degree equal to a will and is universally so treated in tax laws. (Tax Law, § 220, subd. 5; § 249-r, par. 4; U. S. Code, tit. 26, chap. 20, part 1, § 1094, par. c.)

This court is convinced that in this connection no worth-while object can be gained by a failure, metaphorically speaking, to designate a common excavating implement by its lexicographical appellation. If such a course were adopted, the presently pertinent problem would solve itself in the same manner as if the decedent, instead of opening the bank account " in trust," had made a specific bequest of its avails; the balance of the estate would be first called

upon to defray debts and funeral and testamentary expenses, but if a deficiency developed for these purposes, the specifically bequeathed bank account would, so far as necessity required, be made available for this purpose. (*Matter of Smallman*, 138 Misc. 889, 910, 911, and cases cited.)

For those, however, to whom such a frank recognition of the verities of the nature of the transaction would be abhorrent, the same result is attainable by a more devious process. Here, however, a differentiation must be made between the decedent's debts on the one hand, and her funeral and testamentary expenses on the other.

In respect to the former, the consideration to be stressed is that at the moment of death, the decedent owed the debts in question and also had subject to her absolute control the funds in the trust bank account. It was her duty to apply the latter in solution of the former, and her failure so to do would amount to a fraud on her creditors which a court of equity will not effectuate in favor of a volunteer. This is the substance of the thought upon which the unanimous decision of the Appellate Division of this department is based in *Beakes Dairy Co.* v. *Berns* (128 App. Div. 137). As the court says (at p. 138): " the gift is completed only at the instant of death. Up to that time the money is that of the depositor to draw out and do with it as he pleases. That being so it must be subject to his creditors during his lifetime, and for the same reason after his death also. One may no more get his money out of reach of his creditors after his death by depositing it in such a way, not to belong to his *cestui* until he dies, than he could do so by means of a will giving it to such *cestui*. His right to the absolute disposition of it during his lifetime makes it his and, therefore subject to his creditors. As was said in a recent case, ' as to my creditors, property is mine which becomes mine for the asking, and no words can make an instrument strong enough to hold it for me and keep it from them ' (*Ullman* v. *Cameron*, 186 N. Y. 339). This was said, it is true, of a pretended trust provision for another in a will, but has just as strong an application to a scheme by which one tries to so fix his property that he may have the ablute control and disposition of it up to the time of his death, b ep it away from his creditors. The deceased did not even have to ask anyone; the money was in his own control."

The solution in respect to the application of portions of this trust bank account for funeral and testamentary expenses presents, however, a different problem although the distinguishing point seems to have escaped the learned tax commissioner in his opinion in *Matter of Computation of Transfer Tax on Trust Funds Deposited in Savings Banks,* above referred to. The theory of the *Beakes*

case is that the effectuation of the terms of the savings bank " trust " would amount to a fraud on creditors which equity will not permit. This theory will not hold in respect to any demand which was not in existence at the time of the death of the depositor, which is the moment when, according to the *Totten* case, the trust is presumed to take effect. At that moment, were there no pre-existing creditors, no fraud would be accomplished since one under no existing obligations may freely dispose of his own. The undertaker who buries the decedent is not his creditor (*Matter of Vitelli*, 146 Misc. 17, 19), since his claim has its inception only by reason of transactions transpiring subsequent to the decease. He may be a creditor of the estate, but this is a very different matter. (*Matter of Vitelli*, supra.)

The true solution lies in another direction if a searching analysis of the real nature of the savings bank transaction is to be held taboo. In the *Totten* case and in many subsequent authorities the thought is emphasized that the death of the depositor without revocation of the trust gives rise merely to a " *presumption* " of an absolute trust as to the balance remaining in the account. (*Hemmerich* v. *Union Dime Savings Inst.*, 205 N. Y. 366, 370.) This is in reality not a presumption at all, but merely a factual inference (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814), which is subject to rebuttal either by any competent evidence or by a stronger inference. (*Morris* v. *Sheehan*, 234 N. Y. 366, 368.)

In the case at bar no evidence has been introduced, but there is the strongest conceivable inference arising from the familiar and customary inclinations of mankind that the decedent had no intention to have this substantially sole asset turned into an irrevocable trust by her death. This inference arises from the natural reverence of every normal person for the dead and the desire of each individual to have his remains laid decently to rest. It is inconceivable that any person would desire to have his body thrown into the quick lime of a Potter's Field merely to enable a distant connection to profit by a few additional dollars from his savings. The mere demonstration that the fial situation of the decedent was such as to make such an eventty inevitable in the absence of charitable intervention by those who owed her no legal duty in this regard, is more than sufficient to rebut a technical factual inference such as exists in a case of this type.

The court, therefore, determines that in so far as the general assets of the estate of this decedent are insufficient to pay the creditors and reasonable funeral and administration expenses of the intestate, these obligations are a charge against the funds in her

savings bank trust account. Any excess, however, will belong to the beneficiary named in the tentative trust, since the "presumption" that the trust became absolute on her death will only be rebutted to the extent necessary to make these payments.

The present application will, therefore, be denied, without costs, the orderly administration of the estate will continue and the administrator will be under obligation to account to the beneficiary named in the trust in like manner as if this savings account had been specifically bequeathed to her by will.

Proceed accordingly.