In the Matter of the Estate of YETTA MATTHEWS, Also Known as
YETTA LUCHTAN, Deceased.

Surrogate's Court, Kings County, December 17, 1940.

*Morris J. Levy,* for Gertrude Merkin, as executrix, etc., petitioner.

*Leo F. Rayfiel,* special guardian for Eugene Feistman, infant
beneficiary of savings bank trust account.

DODD, J., Acting Surrogate.    Upon this accounting the executrix
seeks to charge against a " Totten " trust for the benefit of the
infant son of the deceased a cash deficiency of $18.55 and commis-
sions for administering the estate of the deceased, and her attorney
also seeks an allowance under section 231-a of the Surrogate's Court
Act for services in the settlement of the estate of $350, with an
additional $11.70 for disbursements, despite the fact that the total
gross assets of the estate aggregate only $140.95.

These assets were four in number and consisted of " last week's
wages due to deceased, $18.22," check from Social Security, $79.09;
sale of ring and tie pin, $30, and sale of household furnishings,
$13.64.

The debts of the decedent aggregated $122.50, all for expenses of her last illness. Her funeral cost $27, and there has been an additional disbursement of $10 for allowance to the special guardian on the probate.

The policy of the State of New York to avoid the trouble and expense of administering wholly insignificant estates of this type is demonstrated in sections 103-a and 103-b of the Decedent Estate Law, in the former of which authorization is extended for the payment of wages of a decedent not exceeding $150 in amount to certain specified relatives of a deceased person without the intervention of administration, and in the latter, for the like payment of Social Security benefits not exceeding $300 in amount.

Since the infant had a general guardian, the chief items of the assets in this estate, aggregating a gross sum of $97.31, could have been reduced to possession by this means without the intervention of administration. The household furniture, which is included in the enumeration of the account at a sale value of $13.64, was not an asset of the estate, but devolved directly to the infant son pursuant to the provisions of section 200 of the Surrogate's Court Act.

This leaves only the ring and tie pin, sold for $30, which inevitably passed into the possession of the infant and his ownership of which would not have been subject to question if, as this court would unquestionably have directed on the application of the general guardian, he had paid from the trust funds the insignificant deficiency of $38.55 necessary for the payment in full of her debts and funeral expenses. Considering the fact that in this process he would have received the ring and tie pin, worth $30, this would have resulted in an invasion of the trust funds only to the extent of $8.55, whereas by the method which the accountant and her attorney have adopted, there would be an invasion, if their application were to be granted, of $375.

It is entirely obvious from this analysis that the manner in which this estate has been handled was improvident to a degree. The decedent had apparently closely estimated her resources and anticipated that her property, exclusive of the moneys in the trust, would suffice for the expenses of her last illness and her burial. Had the entire matter been handled as it should, her calculations would have miscarried by the sum of $8.55 only.

The application by the accountant and her attorney are predicated on the decision of this court in *Matter of Reich* (146 Misc. 616) in which it was held that the " presumption " of the creation of an absolute trust arising on the death of a depositor from the opening of an account in the " Totten " form would yield to the

inference of a desire for decent burial and for the solution of just obligations and that so much of the trust funds as were *necessary* for their solution would be charged with their payment. That rule is proper for application to the present situation, but it will not be extended beyond the precise limits of the former decision with emphasis placed on the word " necessary."

As hereinbefore demonstrated, the actual deficiency, if the matter had been handled in the way it should have been, would not have exceeded $8.55. The general guardian would also have been justified in consulting an attorney for advice respecting the proper method for closing the matter. A liberal compensation to him for the giving of correct advice in this regard would have been $25 and he may not be permitted to invade the small patrimony of this infant on any theory of wish of the decedent because his advice was unfortunate.

The attorney will accordingly be awarded the sum of $25 in full for all claims, payable from the avails of the trust which are now in the hands of the general guardian jointly with the clerk of this court, and the sum of $8.55 will be paid to the accountant from the same source. No costs will be taxed.

Enter decree, on notice, in conformity herewith.