CLARENCE A. VAN DEVERE v. MARIE B. MOORE.[1]

December 24, 1954.

No. 36,397.

[1]Reported in 67 N. W. (2d) 664.

*Russell Smith,* for appellant.

*Lynn S. Helgerson* and *George Maloney,* for respondent.

DELL, CHIEF JUSTICE.

This is an action to set aside a deed and have it declared void. Plaintiff appeals from a judgment rendered in favor of the defendant.

The facts in this case are not in dispute and may be summarized from the findings of fact by the trial court. Plaintiff and Grace Van Devere had been married for a period of 33 years. They had no children but Mrs. Van Devere, by a previous marriage, was the mother of two children, a daughter, Marie Reiter, and a son, Daniel Parks. Daniel died intestate on July 10, 1948, leaving his mother as his sole heir. She was duly appointed administratrix of his estate, which consisted of a cottage at Medicine Lake appraised at a value of $1,000. This is the real estate involved in this action. On January 11, 1950, pursuant to petition, the administratrix was licensed to sell said real estate at private sale, subject to reappraisal. On February 6, 1950, the real estate was reappraised at $1,000 and was thereupon sold by Mrs. Van Devere to her sister, the defendant, for $1,000, said sum being paid in cash on delivery of the deed. The sale was duly reported to and confirmed by the probate court. The defendant was a surety on the administratrix's bond which was in the sum of $100, and no additional bond was required by the probate court for the sale of the premises. Subsequent to this sale Mrs. Van Devere initiated Torrens proceedings in the district court and on March 20, 1950, an owner's duplicate certificate of title to the land in question was issued to the defendant. The defendant paid for the legal services rendered in probating the Parks estate and in the Torrens proceedings. From the date of the confirmation of the sale up to the death of Mrs. Van Devere on July 19, 1950, the defendant did not exercise any rights or claims as purchaser of the property, and the plaintiff first became aware of the sale and of the probate proceedings resulting in the sale after Mrs. Van Devere's

decease. Under Mrs. Van Devere's will, the plaintiff is the sole devisee and legatee of her estate.

For a period of approximately two and a half years prior to her death, Mrs. Van Devere and the plaintiff had been having marital difficulties. During this period Mrs. Van Devere informed several persons that she was not getting along very well with the plaintiff and that he would not receive a penny of her property if she could avoid it. The court found that at the time of the sale proceedings in probate court the Parks estate was in such condition that it could be closed by petitioning for settlement and distribution of the estate, and that the procedure used for the sale of the property was adopted by Mrs. Van Devere for the purpose of avoiding her husband's signature to the transfer of the property. The defendant was well acquainted with Mrs. Van Devere's feelings toward her husband and willingly co-operated with her in the sale of the premises. The reappraisal of the property was made without the appraisers personally viewing or inspecting the premises, and its real value exceeded the sale price by $2,500.

Plaintiff contends that under these facts the conveyance made by Mrs. Van Devere to the defendant should be set aside and declared void because of fraud and conspiracy between the two designed to deprive plaintiff of his marital interest in the property. The nature of the "marital right" of which the plaintiff claims he was defrauded is not clearly defined or explained by the parties. Apparently the marital right referred to by plaintiff is our statutory substitute for common-law dower and curtesy,[2] which, under certain conditions, including renunciation of any disposition by will, gives the surviving spouse an undivided one-third or sometimes one-half[3] of "all real property of which the decedent at any time while married to such spouse was seized or possessed." The statute also provides that the surviving spouse has a right to a similar share in the personal

---

[2]M. S. A. 525.16 (2, 3).

[3]One-half is awarded if a spouse and only one child or the issue of a deceased child survive.

property owned by the decedent at the time of his death,[4] in addition to certain statutory allowances.[5]

We have recognized in the past that transfers by the husband reducing the amount of personalty available at his death may, under some circumstances, be in fraud of the interest conferred upon the wife by statute.[6] However, unlike some jurisdictions, we have seldom been confronted with the same problem regarding real estate. The reason for this difference is that under our statute the inchoate interest of one spouse attaches immediately upon "seizen or possession" of realty by the other and, except under those situations specified by statute,[7] this interest cannot be destroyed by alienation or otherwise impaired unless consented to.[8] Consequently, the only possible means by which one spouse may deprive the other of this inchoate interest would be either to avoid being "seized or possessed" of realty during coverture or to invoke one of the situations specified in the statute that cuts off the surviving spouse's interest. If fraud exists in the various methods that might be adopted to accomplish either of these ends, the surviving spouse is entitled to relief.[9] Moreover, issuance of a certificate of registered title will not bar relief in such cases, at least if bona fide purchasers are not involved.[10]

[4]M. S. A. 525.16 (1, 3).

[5]M. S. A. 525.15 (1) allows the surviving spouse wearing apparel, household goods up to and including $1,000, and other personal property not exceeding $500. M. S. A. 525.15 (3) provides for reasonable maintenance during administration.

[6]Smith v. Wold, 125 Minn. 190, 145 N. W. 1067; see, Maruska v. Equitable L. Assur. Society (D. Minn.) 21 F. Supp. 841.

[7]*E.g.,* payment of decedent's debts by execution or judicial sale.

[8]Hentges v. Hoye, 158 Minn. 402, 197 N. W. 852; Griswold v. McGee, 102 Minn. 114, 112 N. W. 1020, 113 N. W. 382.

[9]See, Wellington v. St. Paul, M. & M. Ry. Co. 123 Minn. 483, 144 N. W. 222; Dewing v. Dewing, 112 Minn. 316, 127 N. W. 1051; Amundson v. Hanson, 150 Minn. 287, 292, 185 N. W. 252, 254; 9 Dunnell, Dig. (3 ed.) § 4280. As to the effect of antenuptial transfers, see Bregy and Wilkinson, *Antenuptial Transfers as Frauds on Marital Rights in Pennsylvania,* 90 U. of Pa. L. Rev. 62.

[10]Baart v. Martin, 99 Minn. 197, 108 N. W. 945.

Mrs. Van Devere, being her son's sole heir as well as administratrix of his estate, became vested with title to the land in question immediately upon his demise, subject only to the claims and expenses of administration.[11] Although she was thereby "seized and possessed" of the realty, a valid sale by a representative under license of the probate court operates to "divest" the heirs of their title and the purchaser takes free from them or anyone claiming under them. In effect the divestment of title is *ab initio*, and the purchaser takes the title of which the decedent died seized.[12] Consequently, if the sale by Mrs. Van Devere as representative was valid it operated to deprive the plaintiff of any inchoate statutory interest he had in the property.

The determination of whether a transaction terminating the rights of a surviving spouse to either realty or personalty is fraudulent has been the subject of considerable confusion and inconsistency. Although there are decisions to the contrary,[13] under the prevailing view an intent to limit or cut off a spouse's marital interest does not of itself render the transaction fraudulent.[14] We agree with the majority view that intent or motive is not a sound basis for invalidating an otherwise valid transaction. In the leading case of Newman v. Dore, 275 N. Y. 371, 9 N. E. (2d) 966, 112 A. L. R. 643, the court held that the determination should properly rest on whether the transaction is *a real one or merely an illusory device,*

[11]Mason's Dunnell, Minn. Probate Law (2 ed.) § 77.

[12]Kietzer v. Nelson, 157 Minn. 463, 196 N. W. 641; Mason's Dunnell, Minn. Probate Law (2 ed.) § 990.1.

[13]Martin v. Martin, 282 Ky. 411, 138 S. W. (2d) 509; Merz v. Tower Grove Bank & Trust Co. 344 Mo. 1150, 130 S. W. (2d) 611; Ibey v. Ibey, 93 N. H. 434, 43 A. (2d) 157.

[14]Osborn v. Osborn, 102 Kan. 890, 172 P. 23; Wright v. Holmes, 100 Me. 508, 62 A. 507, 3 L.R.A.(N.S.) 769; Poole v. Poole, 129 Md. 387, 99 A. 551; Rabbitt v. Gaither, 67 Md. 94, 8 A. 744; Leonard v. Leonard, 181 Mass, 458, 63 N. E. 1068; Newman v. Dore, 275 N. Y. 371, 9 N. E. (2d) 966, 112 A. L. R. 643; Potter Title & Trust Co. v. Braum, 294 Pa. 482, 144 A. 401, 64 A. L. R. 463; see, Cahn, *Restraints on Disinheritance*, 85 U. of Pa. L. Rev. 139, 151.

sometimes referred to as a "colorable" transaction.[15] This rule has been repeatedly followed in New York and elsewhere.[16] When considered in connection with all the facts and circumstances present in a particular case, the "real or illusory" test serves as a meaningful guide.

Viewed in light of this test, plaintiff's other arguments are equally without merit. Among the extrinsic facts which plaintiff contends render the procedure followed here fraudulent are the facts that the defendant never took possession of the premises; that the appraisers before sale did not view the property and that it was appraised and sold for an amount far less than its actual value; that the defendant was a surety on Mrs. Van Devere's bond; and that, since the Parks estate was ready to be closed and the property decreed, there was no necessity for the sale. It is obvious that the plaintiff does not stand in the same position to assert these defects or irregularities as an heir, creditor, or other person directly interested in the estate. The sole basis for relief, if he is entitled to any, is that the sale was fraudulent in the sense that it was a sham or fiction, and the factors enumerated are significant only insofar as they tend to establish this. None of the factors urged, taken either separately or collectively, compel the conclusion that this was an *illusory* rather than an *actual* sale. In form the defendant, for an agreed price, was to get title, control, and possession of the property. In substance the defendant paid the agreed price, received title, and the right to exercise control and possession of the property if and when she so desired. Although defendant testified that after the sale she visited the premises and had a set of keys to the cottage, she admits that she did not exercise possession. On the other hand, there was no testimony that Mrs. Van Devere ever exercised any control over the

[15]An interesting discussion and analysis of this theory is found in Sykes, *Inter Vivos Transfers in Violation of the Rights of Surviving Spouses,* 10 Md. L. Rev. 1. A distinction between "illusory" and "colorable" is made in Smith, *The Present Status of "Illusory" Trusts—The Doctrine on Newman v. Dore Brought Down to Date,* 44 Mich. L. Rev. 151, 153 to 155. The distinction is unimportant in the instant case.

[16]See, Smith, *supra,* footnote 15; 52 Yale L. J. 656.

property after the sale either. In the absence of a showing that Mrs. Van Devere effectively retained the benefits of ownership, the defendant's failure to exercise possession is just as consistent with an actual transfer as it is with an illusory one.

Nor was there any showing that the payment of the purchase price was deceptively made. The failure to have the property properly appraised, while detrimental to the estate and those interested in it, has little significance in determining whether the transaction was merely a pretense. There is abundant authority to the effect that transfers by the husband without any consideration whatever for the purpose of avoiding the wife's marital interest are valid if, in fact, genuine.[17] While the fact that the defendant was a surety on the bond of Mrs. Van Devere might render the sale voidable as to those having a substantial interest in its proceeds,[18] it does not make the sale any the less a real one. Similarly it is not necessary that debts exist before a sale of property under license of a probate court can be made if it is determined that the estate and persons interested therein will be benefited by the transaction.[19]

At most plaintiff has shown that the defendant and Mrs. Van Devere entered into an agreement that worked to his disadvantage, with the specific intent of depriving him of his statutory inchoate interest in the land. This intent is not in itself sufficient to characterize the sale as fraudulent. There was no compelling showing that in substance the sale was other than what it was represented to be, an actual transfer of property with Mrs. Van Devere relinquishing all her rights and interest in and to the premises. Viewing the transaction as a whole, we find nothing in the evidence or in the trial court's findings that justify us in holding, as a matter of law, that plaintiff is entitled to relief.

Affirmed.

[17]*E.g.*, Spafford v. Pfeffer, 179 Misc. 867, 39 N. Y. S. (2d) 831; Annotations, 64 A. L. R. 466, 112 A. L. R. 649, and 157 A. L. R. 1184.

[18]Sharpe v. Sharpe, 120 Kan. 305, 243 P. 274.

[19]Kietzer v. Nelson, 157 Minn. 463, 196 N. W. 641; Mason's Dunnell, Minn. Probate Law (2 ed.) § 959.