# IN RE ESTATE OF JOSEPH J. JERUZAL AND OTHERS
## v. GERTRUDE M. JERUZAL.

130 N. W. (2d) 473.

August 21, 1964—Nos. 39,137, 39,138.

*James Malcolm Williams*, for appellant.

*Thomas M. Conlin, Murnane, Murnane, Battis & deLambert, Thomas J. Burke, Stacker & Stacker,* and *James J. Riley,* for respondents.

MURPHY, JUSTICE.

This is an appeal from an order denying a motion for amended findings or a new trial in two cases consolidated for trial below and heard together on appeal. The order for judgment in one case, In re Estate of Jeruzal (No. 39,137), directs affirmance of the orders of the Probate Court of Ramsey County admitting to probate the last will and testament of Joseph J. Jeruzal and appointing W. L. Ulvin executor. The order for judgment in the other case, Jeruzal v. Estate of Jeruzal (No. 39,138), finds certain assets to be not a part of decedent's estate for the purpose of determining the widow's interest under Minn. St. 525.16, the widow having renounced the will.

Decedent, Joseph J. Jeruzal, a widower, married plaintiff, Gertrude M. Jeruzal, on October 11, 1959. At that time he was 67 years of age. There were no children of his first marriage. On January 9, 1960, decedent made a will by which, after making specific bequests to various relatives and charities, he left the residue to his wife. The marriage did not work out well, and in June 1960 they separated, Mrs. Jeruzal going to live with her son by a former marriage. Apparently they remained on friendly terms. Mrs. Jeruzal visited her husband on weekends and took care of him during recurring illnesses caused by excessive drinking. Decedent was hospitalized four times during the marriage as a result of acute alcoholism. The fourth episode ended with his death on March 11, 1961. The wife moved back into the home in January 1961 to take care of decedent during his final illness. An action for separate maintenance was started in the summer of 1960, and the parties also apparently discussed divorce with their attorneys. Nothing came of these proceedings; but decedent, on advice of his attorney, gave his wife $200 a month during the time she was living with her son.

On September 19, 1960, decedent transferred $10,000 from an account in his name in the St. Paul Federal Savings & Loan Association to three savings account trusts. These trusts are hereinafter referred to as "Totten trusts," after the leading case of Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, which established the validity

of such savings account trusts.[1] The beneficiary of each of these trusts was a relative, or a relative of decedent's first wife. On the same day decedent transferred $10,100 from an account in his name in the Twin City Federal Savings & Loan Association to six Totten trusts in favor of various relatives. On January 4, 1961, decedent transferred $8,000 from an account in his name in the Minnesota Federal Savings & Loan Association to two Totten trusts, each in the name of a relative. An additional beneficiary was added to the title of one of these latter trusts on February 10, 1961. These various relatives were brothers, sisters, nephews, and a niece of decedent; nieces of decedent's first wife; and a nephew of decedent's first wife who had lived with him for several years.

On October 20, 1960, decedent made a new will in which, after providing for his debts and funeral expenses, he left his wife a life estate in his homestead and half of his estate.[2] He left $1,000 each to five charities, these being the same as in his will of January 1960, except that one charity had been eliminated and one reduced from $2,000. The residue was left to decedent's brothers and sisters. The specific bequests to relatives in the prior will were omitted. The nine Totten trusts established on September 19, 1960, were identical in amounts to the specific bequests to the same individuals in the earlier will, except that the amount given to one niece was reduced from a $2,000 bequest to a $1,050 trust, while the amount for another niece was increased

---

[1]The Totten trust is defined in Matter of Totten, 179 N. Y. 112, 125, 71 N. E. 748, 752, 70 L. R. A. 711, 717, as follows: "* * *A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation or some decisive act of declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

[2]It is conceded that the attempt to leave Mrs. Jeruzal merely a life estate in the homestead was an error of decedent's counsel and that she is entitled to the fee in the homestead.

from $1,000 to $1,050, and the amount given to one nephew was reduced from a $3,000 bequest to a $2,000 trust. Two sons of Mrs. Jeruzal who were given bequests in the January 1960 will were omitted from both the will of October 20, 1960, and the trusts.

It appears from the evidence that the decedent's motive in establishing the Totten trusts and in preparing a new will was to reduce his wife's share in his estate as well as to benefit his various relatives. He is reported to have said that the amount provided for his wife in the will of October 20, 1960, was adequate for the short time she lived with him. It appears clear that he felt that Mrs. Jeruzal had married him for his money.

The following appears to be an approximate inventory of decedent's property:

| | |
|---|---|
| Savings account—American National Bank | $ 5,585.72 |
| Checking account—American National Bank | 476.21 |
| Homestead | 17,500.00 |
| Contract for Deed | 12,000.00 |
| Miscellaneous personal property | 1,000.00 |
| Contingent accounts receivable | 2,000.00 |
| Eleven Totten trusts | 28,100.00 |
| Sixteen Series E Government Bonds, payable to decedent during his life and on his death to various relatives | 15,000.00[3] |
| Total | $81,661.93 |

Two issues are involved in this appeal. The first is whether the Totten trusts must be included in the estate for the purpose of determining the interests of the surviving spouse under Minn. St. 525.16, which governs descent of property. The second issue is whether there was sufficient evidence to support the finding of the district court that

---

[3]The E bonds are not involved in this litigation. The disposition of this asset appears to be governed by United States treasury regulations. Connell v. Bauer, 240 Minn. 280, 61 N. W. (2d) 177, 40 A. L. R. (2d) 776; Long v. Campion, 250 Minn. 196, 84 N. W. (2d) 686; Graham Estate, 3 Pa. D. & C. (2d) 218.

the decedent was "mentally competent, in full possession of his faculties, was fully aware of the nature, quantity and quality of his estate and was fully aware of the persons who would be entitled to his bounty" at the time of the establishment of the trust accounts and when he executed the second will.

The statutes which we must consider are, first, Minn. St. 48.30, which provides for establishment of Totten trusts. That statute provides in part:

"* * * When any deposit shall be made by any person in trust for another, and no other written notice of the existence and terms of any legal and valid trust shall have been given to the bank, in case of the death of the trustee, the same, or any part thereof, and the dividends or interest thereon, may be paid to the person for whom the deposit was made."

The other is the descent statute, § 525.16, which determines the statutory share of the surviving spouse and provides in part:

"Except as provided in sections 525.14 and 525.145, and subject to the allowances provided in section 525.15, and the payment of the expenses of administration, funeral expenses, expenses of last illness, taxes, and debts, the estate, real and personal, shall descend and be distributed as follows:

"(1) Personal property: To the surviving spouse one-third thereof free from any testamentary disposition thereof to which such survivor shall not have consented in writing or by election to take under the will as provided by law;

\*       \*       \*       \*       \*

"(3) If a spouse and only one child or the issue of a deceased child survive, the share of the spouse under the provisions of clauses (1) and (2) shall be one-half instead of one-third."

■ We must consider under the facts in this case whether the act of decedent in establishing Totten trusts by which all or a substantial part of decedent's personal property is taken out of his estate is invalid as in fraud of the marital interests of the surviving spouse. In discussing this general area of the law we noted in Van Devere v. Moore,

243 Minn. 346, 350, 67 N. W. (2d) 664, 667, that it represents a "subject of considerable confusion and inconsistency." Accordingly, it must be kept in mind that what we say here does not apply to trusts or gifts generally but is limited to the issue of whether savings account trusts may be used effectively to deprive the surviving spouse of statutory marital rights in personal property. In considering this issue the nature of the savings account trusts or Totten trusts should be examined.

It may be said that Minn. St. 48.30 was adopted to protect banks in case of payment to a beneficiary before receiving notice of the claim of the representative of the estate. But because of the special nature of this type of gift, court decisions have extended the scope of the statute to give broad protection to the interests of beneficiaries. It was originally held in Matter of Totten, *supra*, that if the depositor dies before the beneficiary, without having done some act to revoke or disaffirm, a presumption arises that an absolute trust was created as to the balance remaining after the depositor's death. This rule was adopted by this court in Walso v. Latterner, 140 Minn. 455, 168 N. W. 353; Id. 143 Minn. 364, 173 N. W. 711; Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865, 14 Minn. L. Rev. 701; and Coughlin v. Farmers & Mechanics Sav. Bank, 199 Minn. 102, 272 N. W. 166. We said in Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 433, 229 N. W. 865, 866:

"* * * where a depositor deposits his own money in his own name in trust for another, he thereby creates a valid trust if it appears that he in fact intended the money to go to the other. * * * where he makes such a deposit and dies before the beneficiary without having taken any action to disaffirm the trust, the presumption is that an absolute trust was created as to the balance remaining on deposit at his death."

Since the trust does not in fact arise until the death of the depositor, it would seem that the disposition is testamentary in character and should be invalid for that reason. Nevertheless, courts have adopted the policy of holding these trusts valid since they provide a method for disposing of small estates in a convenient and reasonably fraud-proof

way without the formalities specified by the Probate Code and without the expense of probate proceedings.[4]

Appellant vigorously contends here, however, that because the donor retains control over it during his lifetime, the trust is colorable and illusory and not effective as a gift. It is asserted that the Totten trust may not be used as a testamentary device to defraud the surviving spouse of the share in decedent's estate which she would otherwise be entitled to under the inheritance laws.

It may be said generally that authorities have used three approaches to the question. The bulk of decisions come from New York where the Totten trust doctrine originated. The earlier decisions were somewhat inconclusive but generally inclined to protect the interests of the widow. Newman v. Dore, 275 N. Y. 371, 9 N. E. (2d) 966, 112 A. L. R. 643, did not involve a Totten trust but rather the question of fraud on marital rights generally. In that case the husband had, 3 days before his death, transferred his entire estate to trustees to the benefit of parties other than his wife, retaining the income for life as well as complete powers of control and revocation. The court laid down the rule that, though intention to defeat the widow's rights under the Decedent Estate Law was largely irrelevant, the trusts were illusory and thus invalid against the wife's claims because the husband retained complete control of the funds. In Krause v. Krause, 285 N. Y. 27, 32 N. E. (2d) 779, the trust was found to be illusory in an opinion which apparently held that under the facts in that case there was an intent to cut off the surviving spouse with little or nothing.

In the later New York case of Matter of Halpern, 303 N. Y. 33, 100 N. E. (2d) 120, that court significantly enlarged the effect of this type of trust. It not only determined that an intention of the donor to defeat the interest of the surviving spouse was not evidence that the trust was illusory, but went on to hold that the extent of control which he retained over the trust during his lifetime was irrelevant. That de-

---

[4]14 Minn. L. Rev. 701, 703, states: "The result is perhaps desirable, but it is questionable whether establishing such a rule is not a matter more properly for the legislature than for the courts. See Lattemore, Judicial Legislation in New York (1905) 14 Yale L. J. 312, 315."

cision recognized that it was in the nature of such a trust that the depositor retained complete control. The test applied was whether a gift-making intention was the primary motive in establishing the trust, or whether the depositor intended to use the trust as a device in the conduct of his own affairs. The effect of the decision appears to be that even though a depositor reserves complete control over a Totten trust, it is nevertheless valid as against the surviving spouse. In the Halpern case the New York court said (303 N. Y. 37, 100 N. E. [2d] 122):

"* * * It is, perhaps, regrettable that any husband resorts to such transfers to keep his money from his wife. But Totten trusts, if real and not merely colorable or pretended, are valid transfers with legally fixed effects. * * * Censurable though [the donor's] motive may have been, he was doing what the law allowed. Unworthiness of motive could not make illusory an otherwise complete transfer."

This ruling has been criticized on the ground that it violates the policy of the inheritance laws which are designed to protect a surviving spouse from being cut out of a fair share of the estate. 1 Scott, Trusts (2 ed.) § 58.5. However, the Halpern case has been followed by the New York courts in In re Naydan's Estate, 107 N. Y. S. (2d) 701; In re Prokaskey's Will, 109 N. Y. S. (2d) 888; In re Leiman's Estate, 116 N. Y. S. (2d) 658, affirmed without opinion, 281 App. Div. 764, 118 N. Y. S. (2d) 750, appeal denied, 281 App. Div. 845, 119 N. Y. S. (2d) 230; In re Zern's Estate, 138 N. Y. S. (2d) 894; Bergmann v. Bergmann, 5 Misc. (2d) 190, 159 N. Y. S. (2d) 844; and apparently by a California court in Kosloskye v. Cis, 70 Cal. App. (2d) 174, 160 P. (2d) 565.

The issue has been considered in numerous decisions by the Maryland courts. That jurisdiction appears to have adopted an equitable approach on a case-by-case basis. The significant Maryland authorities are Sturgis v. Citizens Nat. Bank, 152 Md. 654, 137 A. 378; Mushaw v. Mushaw, 183 Md. 511, 39 A. (2d) 465; and Whittington v. Whittington, 205 Md. 1, 106 A. (2d) 72. The factors which the Maryland court considers determinative of whether a savings account trust is real or illusory are "the completeness of the transfer and the extent of control retained by the transferor, the motive of the transferor, par-

ticipation by the transferee in the alleged fraud and the degree to which the surviving spouse is stripped of his or her interest in the estate of the decedent spouse * * * the relative moral claims of the surviving spouse and of the transferees, other provisions for the surviving spouse, whether or not he or she has independent means and the interval of time between the transfer and the death of the transferor."[5] In the Mushaw case the issue was resolved in the wife's favor because the savings accounts there established almost completely stripped the widow of her marital rights in the personal property of her husband. Decisions of the Maryland court have depended mainly upon the degree to which the surviving spouse might be left destitute. In Whittington v. Whittington, 205 Md. 1, 11, 106 A. (2d) 72, 76, 49 A. L. R. (2d) 513, the court said:

"It must be admitted * * * that the test of degree does not commend itself as a legal criterion. If the wife receives less than her legal share in the personal estate, it would seem to be quite immaterial that she is not wholly cut off, that she receives her dower rights in the real estate, or that she has resources of her own. On the other hand, as suggested in the Mushaw case, courts of equity have always inquired into the fairness, under all the circumstances, of transactions between persons in a confidential relation."

See, Annotation, 49 A. L. R. (2d) 607.

The third approach as expressed by Restatement, Trusts (2d) § 58, comment *e,* takes into consideration the intent of the donor in carrying out the gift but also gives protection to the wife's interest under inheritance law. It comprehends that the beneficiaries of the trusts receive what the decedent intended them to have except in so far as such funds are necessary to satisfy the statutory share of the surviving spouse after the general assets of the estate are used up. The Restatement comment provides:

"*Restrictions on testamentary disposition.* Although the surviving spouse in claiming his or her statutory distributive share of the estate of the decedent is not entitled to include in the estate property trans-

---

[5]Whittington v. Whittington, 205 Md. 1, 12, 106 A. (2d) 72, 77.

ferred during his lifetime by the decedent in trust for himself for life with remainder to others, even though the decedent reserves a power of revocation (see § 57, Comment c), the surviving spouse of a person who makes a savings deposit upon a tentative trust can include the deposit in computing the share to which such surviving spouse is entitled.

"Although the amount which the surviving spouse is entitled to receive is measured by the sum of the decedent's owned assets and the amount of such deposits, the owned assets are to be first applied to the satisfaction of the claim of the surviving spouse. The situation is somewhat similar to that in which creditors seek to reach the estate of a decedent who has by will exercised a general power of appointment. See Restatement of Property, § 329."

This solution has been adopted by Pennsylvania probate courts. Black Estate, 73 Pa. D. & C. 86; Graham Estate, 3 Pa. D. & C. (2d) 218; Krasney Estate, 10 Pa. D. & C. (2d) 450; Del Conte v. Luca, 2 Pa. D. & C. (2d) 130. The same result is now reached in Pennsylvania by statute, 20 Purdon's Pa. Stat. Ann. (Perm. ed.) § 301.11.

While the Minnesota court has not been faced with the precise issue before us, there are several authorities dealing with other types of transfers alleged to have been a fraud on the marital rights of the spouse which may have some bearing on this question. These decisions recognize that our legislature has not limited the common-law right of the husband against everyone, save his creditors, to dispose of his personal property in any manner which he thinks proper during his lifetime. Minnesota authorities relating to the subject of fraud on marital rights through gifts inter vivos would indicate a policy generally in line with that followed by the Maryland courts. See, Smith v. Wold, 125 Minn. 190, 145 N. W. 1067; Van Devere v. Moore, 243 Minn. 346, 67 N. W. (2d) 664; Balafas v. Balafas, 263 Minn. 267, 117 N. W. (2d) 20; Nash v. Kirschoff, 157 Minn. 418, 196 N. W. 488; Id. 166 Minn. 464, 208 N. W. 193.

In Balafas v. Balafas, 263 Minn. 267, 275, 117 N. W. (2d) 20, 26, we said that during the husband's lifetime he "could have disposed of his personal property as he saw fit, even if the effect of it was to diminish his spouse's marital interest upon his death." Even though

the husband has this right, our decisions recognize that there may be circumstances where the transfer to a third party by a spouse will operate as a fraud on the other so that a court of equity will interfere. Nash v. Kirschoff, *supra*; Smith v. Wold, *supra*; Amundson v. Hanson, 150 Minn. 287, 185 N. W. 252. But this court has apparently never considered a case where it found such fraud to exist; and the basis for such interference must be fraud. In Smith v. Wold, 125 Minn. 190, 192, 145 N. W. 1067, 1068, it was said:

"* * * A court cannot say with minute exactness just how much the husband may give away without subjecting himself to a just charge of fraud. He may make gifts. He is not required to keep one-third of his property intact for his wife. Fraud is the basis of the relief which the widow gets."

In the Smith case the court, while holding that a husband is not required to keep one-third of his property intact for his wife, appeared to suggest that whether or not the wife was left enough to take care of ordinary comforts might determine whether or not a transfer constitutes fraud on the wife's marital rights. In that case the widow got $8,000 to $10,000 out of an estate which, including the challenged gifts, amounted to $41,600. The court felt this was sufficient for comfort, by 1914 standards. It is clear from the opinion that intention to reduce a wife's share in her husband's property below one-third is not in itself a fraud on her rights.

The leading Minnesota case in this area is Van Devere v. Moore, 243 Minn. 346, 67 N. W. (2d) 664. In that case decedent, as sole heir of her son and administratrix of his estate, sold certain real estate from the estate to her sister, the defendant in the case. After her death her husband, who had not previously known of the sale, attacked it as a fraud on his marital rights. The property had been appraised at $1,000, but was worth about $3,500. Plaintiff and his wife had been having marital difficulties at the time of the sale. They were partners to a second marriage, a circumstance common to most of the cases involving the issue before us. After taking notice of the troublesome ambivalence found in this area of the law, we there said (243 Minn. 350, 67 N. W. [2d] 667):

. "* * * Although there are decisions to the contrary, under the prevailing view an intent to limit or cut off a spouse's marital interest does not of itself render the transaction fraudulent. We agree with the majority view that intent or motive is not a sound basis for invalidating an otherwise valid transaction."

We held that the sale, was real despite the following factors: The decedent's intent to prevent her husband from securing an interest in the property; her failure to have appraisers view the property and sale at far less than actual value; the fact that defendant was surety on decedent's bond as administratrix; lack of necessity for the sale; and the fact that defendant never took possession of the property. We further said (243 Minn. 352, 67 N. W. [2d] 668):

"* * * There is abundant authority to the effect that transfers by the husband without any consideration whatever for the purpose of avoiding the wife's marital interests are valid if, in fact, genuine."

The Van Devere case was followed in Balafas v. Balafas, *supra*. There two brothers had amassed partnership assets of $700,000, with an agreement that all would go to the survivor. The widow of the deceased brother attacked this arrangement on the ground, among others, that it was a fraud on her marital rights. The court rejected this argument, quoting from the Van Devere case and pointing out that the widow did receive $64,000 from inter vivos transfers.

Accordingly, it appears that in Minnesota a motive to deprive one's spouse of the statutory inheritance by inter vivos transfers generally is irrelevant, the only test being whether the transaction is real. This principle, if extended to Totten trusts, would lead to the adoption of the New York rule enunciated in the Halpern case that the balance in a Totten trust cannot be reached by the surviving spouse if the trust is real, that is, if the donor intended the named beneficiary to get the money. There is some suggestion in Smith v. Wold, *supra*, that the surviving spouse can reach transferred funds if he or she would otherwise be left destitute. This is the rule of Mushaw v. Mushaw, *supra*.

We are not satisfied that either the New York or Maryland rule should be adopted. While the Maryland rule is more equitable, it pro-

vides no clear standard of application. Under both the New York and Maryland rules, the trust is either good against the spouse or void altogether. We would prefer the Restatement rule, by which the beneficiaries receive what the decedent intended them to have except so far as the trust funds are necessary to satisfy the statutory interests of the spouse after the general assets of the estate have been exhausted. However, in view of the widespread use of Totten trusts in the area of testamentary disposition, we do not feel free to adopt the Restatement rule without first giving the legislature an opportunity to provide for it by statute as was done in Pennsylvania.

Because of such widespread use of Totten trusts and the reliance which attorneys have doubtless placed on our previous, more general decisions on marital fraud, we will be guided here, and in other cases in which the trust becomes absolute by the death of the depositor before the end of the next session of the legislature, by our previous decisions. In doing so we must affirm the trial court on this issue. It cannot be said that in establishing the trusts in question with the idea of depriving his wife of a share of the money placed in those trusts, decedent was guilty of a breach of legal or equitable duty. He was doing only what our decisions would permit him to do under Smith v. Wold, *supra*; Balafas v. Balafas, *supra;* Van Devere v. Moore, *supra*; and language found in Walso v. Latterner, *supra*; and Dyste v. Farmers & Mechanics Sav. Bank, *supra*. Nor do we think that the trial court's decision should be disturbed for equitable reasons because it does not appear from the record, at least within the standard indicated by the Wold and Balafas cases, that the surviving spouse has been left destitute.

The record fairly establishes that the Totten trusts established by decedent were for the benefit of relatives who would reasonably be expected to be the beneficiaries of his gifts. The record indicates that the trusts were established in good faith with intent to divest himself of ownership.

However, this court will feel free to follow the Restatement rule hereafter if the legislature declines to act on this matter. The Totten trust is itself a judicial creation, limiting the effect of statutory provisions for the disposition of property by will. It is therefore our duty

to subject this judicially created doctrine to such limitations as are necessary to prevent the defeat of substantive statutory policies. The Restatement rule must recommend itself because it prevents the depositor from leaving the surviving spouse destitute while he retains complete control of the funds during lifetime. The statutory policy against allowing the widow to be left destitute should not be subordinated to the policy of giving broad effect to savings account trusts, however desirable the latter might be. We cannot overlook the danger that lies in the general use of Totten trusts as they may affect the surviving spouse. Actually, a depositor accomplishes nothing by a Totten trust which he could not accomplish by a will. Only the procedure, not the substance, is changed. Moreover, it should be acknowledged that Totten trusts are actually part of the general assets of the estate in the sense that they can be reached for paying funeral expenses and expenses of the estate, if necessary. Matter of Reich, 146 Misc. 616, 262 N. Y. S. 623; Matter of Vetroock, 34 Misc. (2d) 1073; 230 N. Y. S. (2d) 485; Restatement, Trusts (2d) § 58, comment d. The balance may also be reached by creditors of the depositor. Matter of Reich, *supra;* Matter of Halbauer, 34 Misc. (2d) 458, 228 N. Y. S. (2d) 786, affirmed, 18 App. Div. (2d) 966, 238 N. Y. S. (2d) 511; Banca D'Italia & Trust Co. v. Giordano, 154 Pa. Super. 452, 36 A. (2d) 242; Restatement, Trusts (2d) § 58, comment d.

We feel that the Restatement rule avoids both the inequities of the New York rule and the uncertainties of the Maryland rule. It provides a satisfactory balance of the two policies here involved, namely the policy in favor of protecting the surviving spouse from destitution and the policy of allowing testators full control of the disposition of their estates.

This conclusion does not limit the effect of any of our earlier decisions on the extent to which marital rights may be defeated by the use of trusts. Totten trusts are a special case not necessarily subject to rules governing trusts generally.

■ It is next claimed by appellant that the court erred in finding that the decedent had testamentary capacity to execute a valid will, and that the will was not procured through undue influence. We are

of the view that the evidence on this point, though conflicting, provides adequate support for the trial court's finding. The testimony of the numerous witnesses in a long record gives two different and conflicting pictures of decedent's mental situation. We must be controlled by the well-established principle expressed in In re Estate of Anthony, 265 Minn. 382, 121 N. W. (2d) 772, to the effect that the function of an appellate court is limited to a determination of whether or not the trial court's conclusions are manifestly and palpably contrary to the evidence, viewed in the light most favorable to the respondent. The contestant has the burden of proving by clear and convincing evidence that the decedent lacked the necessary mental capacity or that the undue influence which is claimed to have been exerted was of a degree (265 Minn. 386, 121 N. W. [2d] 777) "which, by moral coercion or constraint, overpowers the testator's free agency and substitutes the will of the person exercising it." It was for the trial court which heard this testimony and observed the witnesses to make the determination as to which version was correct. We find no basis for disturbing its conclusion.

The other issues raised by appellant do not require discussion. Both cases are affirmed.

Affirmed.