151 N.W.2d 788 (1967)
In re ESTATE of Joseph J. JERUZAL, decedent.
James Malcolm WILLIAMS, Spec. Admr., Appellant,
v.
W. L. ULVIN et al., Respondents.
No. 40388.
Supreme Court of Minnesota.
June 16, 1967.
*790 James Malcolm Williams and Donovan D. Larson, Minneapolis, for appellant.
Murnane, Murnane, Battis & deLambert, Thomas Conlin, and Thomas J. Burke, St. Paul, for respondents.

OPINION
PETERSON, Justice.
This case is a sequel to In re Estate of Jeruzal, 269 Minn. 183, 130 N.W.2d 473, hereafter referred to as the "Jeruzal case," to distinguish it from the present case, hereafter referred to as the "Williams case."
In the Jeruzal case, only briefly summarized for the purposes of this opinion, Gertrude M. Jeruzal, widow of Joseph J. Jeruzal, decedent, in two consolidated actions contested the decedent's last will and testament and undertook to set aside and marshal into the estate certain savings account trusts, each having designated beneficiaries other than herself, referred to as Totten trusts. The purpose and effect of Mrs. Jeruzal's action, if successful, would have been to increase the amount of decedent's probate estate and thereby increase the amount Mrs. Jeruzal would receive therefrom pursuant to statute (she having renounced decedent's will and elected to take under the statute). Respondent W. L. Ulvin was appointed executor for the estate and at all times opposed the actions of Mrs. Jeruzal. The other persons who would share in the estate of decedent were themselves beneficiaries of the challenged Totten trusts and had no interest whatever in the litigation. The purpose of the litigation, in short, was from start to finish solely for the personal benefit of Mrs. Jeruzal and adverse to the testamentary intent of decedent and to other persons claiming under him.
In the present case Williams, claiming to act in his capacity as special administrator, seeks to recover attorney's fees and expenses incident to the Jeruzal litigation and to effect, also, an extension of the widow's allowance to Mrs. Jeruzal for the period in which the administration was prolonged by that litigation beyond the normal 18-month period. The litigation was commenced in Mrs. Jeruzal's name on April 21, 1961, with Williams subscribing the pleadings as her personal attorney. Thereafter, on May 16, 1961, Mrs. Jeruzal petitioned for the appointment of Williams as special administrator of the estate for the purpose of paying the widow's allowance, and the petition was granted. Williams did not at any time move to substitute himself *791 for Mrs. Jeruzal as a party to the litigation, however, notwithstanding his assertion in district court that "prior to the time we filed the lawsuit * * * it was agreed between she and myself that I would be appointed special administrator and that the special administration would carry out the lawsuit."
This appeal arises from the surcharging of Williams' final account as special administrator in respect to the amounts claimed for litigation fees and expenses[1] and extended payment of widow's allowance.[2] The Ramsey County probate court settled and allowed Williams' account as thus surcharged.[3] A statutory appeal was perfected to the district court, and after a hearing de novo, the court made findings of fact, conclusions of law and order for judgment to like effect. Williams appeals from the district court order denying his motion for a new trial or, in the alternative for amended findings of fact, conclusions of law, and order for judgment.
1. The issue most vigorously pursued on appeal relates to the surcharge of attorney's fees and expenses of litigation. Williams' right to such fees and expenses, if it exists at all, is based on Minn.St. 525.49,[4] which provides compensation in three situations:
a. Where the executor defends the will or prosecutes proceedings in good faith and with just cause for the purpose of having it admitted to probate or where any person successfully opposes the allowance of the will. Although an unsegregated part of the fees and expense of Williams was presumably incurred in the original will contest, it is obviously subject to surcharge because it was a nonrepresentative action and was not successful. The *792 statute is plain on that score, and Williams does not seem to argue to the contrary.
b. Where upon demand the representative refuses to pursue a claim or asset of the estate and an interested party engages an attorney for that purpose and does "recover such fund or asset for the benefit of the estate." It is a fact Mrs. Jeruzal made demand upon Ulvin, as the executor of decedent's estate, to pursue the alleged assets of the estate represented by the Totten trusts, and that Ulvin refused to do so.[5] It is a further fact, of course, that the litigation thereafter commenced by Mrs. Jeruzal, with Williams as her personal attorney, was not successful in "recovering" such funds or assets for the estate. Williams' account, had it been presented on that ground, would again, by the plain terms of the statute, be properly subject to surcharge.
c. Williams bases his claim for the unsegregated portion of fees and expenses attributable to the Totten trust litigation on the statutory ground that an attorney performing services for the estate "at the instance of the representative" is entitled to compensation therefor out of the estate in such amount as the court shall deem just and reasonable. He does not argue that he performed services at the instance of Ulvin, the general representative, but, rather, at the instance of himself as the special representative. His is a sophisticated argument blending two grounds into one, which, if his contention were sound, would thereby avoid the disabling fact that he was not successful in his effort. The district court found, however, that the fees and expenses were "based on legal proceedings commenced by the surviving spouse as an individual and not by the said Special Administrator," and concluded, accordingly, that the "surcharges are not obligations of the estate." This finding is supported by the evidence and itself would warrant affirmance without more.
We nevertheless consider Williams' claim in its broad thrust  that Ulvin as executor had a fiduciary duty to marshal the assets of decedent's estate; that upon Ulvin's failure to perform that duty it was the special administrator's right, indeed duty, to do so, including appointing himself as attorney for that purpose; and, therefore, he acted "at the instance of the representative." The fatal flaw is in the major premise, for it misconceives the role of the representative. The executor has frequently been termed "the champion of the will." In re Estate of Boese, 217 Minn. 583, 585, 15 N.W.2d 16, 17; In re Estate of Healy, 247 Minn. 205, 208, 76 N.W.2d 677, 680; State ex rel. Seifert, Johnson & Hand v. Smith, 260 Minn. 405, 417, 110 N.W.2d 159, 167. The measure of Ulvin's fiduciary duty  and, a fortiori, of Williams' duty  was whether or not in this case his actions effectuated the decedent's testamentary objective. Ulvin's refusal to attack the Totten trusts promoted decedent's objective; Williams' attack would have thwarted it. The effect of Williams' activity, moreover, was not to conserve the estate but to dissipate it by incurring unwarranted delay and expense. He was not, then, discharging any duty owed by Ulvin and, by his own rationale, was accordingly not acting "at the instance of the representative."
Williams points, in addition, to our cautionary reservation in In re Estate of Jeruzal, supra, that "it should be acknowledged that Totten trusts are actually part of the general assets of the estate in the sense that they can be reached for paying *793 funeral expenses and expenses of the estate, if necessary." 269 Minn. 196, 130 N.W.2d 481. "Expenses of the estate," however, means expenses of administration of the kind contemplated by the depositor at the time of his death, including payment of preexisting debts, lest the Totten trust shield a fraud upon creditors. Matter of Reich, 146 Misc. 616, 618, 262 N.Y.S. 623, 626; see, also, Matter of Halbauer's Estate, 34 Misc.2d 458, 228 N.Y.S.2d 786, affirmed, 18 A.D.2d 966, 238 N.Y.S.2d 511. The expense incurred was not necessary, was not for the benefit of the estate, and was not within the contemplation of the decedent. Williams and Mrs. Jeruzal did not undertake these actions to "marshal assets" for the payment of either preexisting debts or funeral expenses. Decedent's estate, as a matter of fact, is solvent although apparently it would be rendered insolvent if the surcharged items of account were allowed.
Williams argues, too, that the litigation expenses should be deemed a proper expenditure because, during the 3 years that he was making the surcharged expenditures, Ulvin made no objection. This argument is utterly without merit. Even if we were to make the dubious assumption that Ulvin himself could have authorized such action as a "necessary expense," it is clear that he did not do so. So far as the record establishes he neither knew nor had any way of knowing that such expenditures were being made by the special administrator. Williams, moreover, was on notice from the very outset that Ulvin opposed the actions that were commenced by Mrs. Jeruzal.
2. A second issue, less forcefully argued by appellant, is whether "[i]n the extraordinary circumstances of this case, the surviving spouse of the decedent should have been allowed an extension of widow's allowances for the period in which administration was prolonged by litigation required by the dictates of fiduciary duty." Because we have indicated fiduciary duty did not dictate these actions, the argument falls of its own weight. An extension of maintenance beyond the normal 18-month period may be made only if granted by the court. Minn.St. 525.15(4). Williams had filed a petition for an increase of the period of maintenance on November 9, 1964, but it was not granted. It appears that the estate would have been settled well within the normal period had the litigation not occurred. We cannot say that on this record the court abused its discretion. The granting of maintenance in the substantial amount claimed, moreover, would have itself accomplished, in part, the widow's initial objective of invading the Totten trusts for her own personal benefit and in contradiction of the decedent's manifest intent.
3. It appears from oral argument that the various savings account passbooks evidencing the Totten trusts in this litigation are in the possession of either Williams or Mrs. Jeruzal and that garnishment actions were undertaken by her contemporaneously with the commencement of her litigation. It is clear that these are the property of the designated beneficiaries and should be returned to them without delay and free from any garnishments that may be still pending.
It is therefore ordered that the special administrator's final account, as surcharged, and the findings of fact, conclusions of law and order for judgment herein are in all respects affirmed and that judgment shall be forthwith entered accordingly. It is further ordered that Gertrude M. Jeruzal and James Malcolm Williams shall forthwith release and deliver to respondent W. L. Ulvin, for delivery by him to the named beneficiaries therein, all the savings account passbooks in his, her, or their possession and that any garnishment proceedings in subject lawsuits shall be and are dismissed.
Affirmed.
OTIS, J., took no part in the consideration or decision of this case.
NOTES
[1] The probate court allowed $750 to Williams for fees as special administrator to compensate him for his work in making collection on a contract for deed and for effecting payments of the widow's allowance. It disallowed attorney's fees ($6,270) attributable to the Jeruzal litigation, which Williams claimed for trial preparation, 7 days of trial, motion for new trial and fees on the appeal and subsequent petition for rehearing to this court; and it disallowed the claimed expense in the Jeruzal litigation ($2,064.30), consisting of such items as service of process, expert witness fee, research fee for another lawyer, filing fees, transcript, and printing of brief and record on appeal. Because the court found that these items were not proper charges in any amount, there was no occasion to pass on the reasonableness of the fees and expense as itemized. See, Distributors Supply Co. Inc. v. Estate of Shablow, 253 Minn. 1, 92 N.W.2d 83.
[2] The widow had been allowed maintenance of $350 per month for a period of 18 months. Additional monthly payments in that amount for the period in excess of 18 months, totaling $7,200, were disallowed.
[3] Certain smaller surcharges immaterial here are not contested.
[4] "Every representative shall be allowed his necessary expenses incurred in the execution of his trust and shall have such compensation for his services as the court shall deem just and reasonable. An attorney performing services for the estate at the instance of the representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable. Where, upon demand the representative refuses to prosecute or pursue a claim or asset of the estate or a claim is made against him on behalf of the estate and any party interested shall then by his own attorney prosecute or pursue and recover such fund or asset for the benefit of the estate, such attorney shall be allowed such compensation out of the estate as the court shall deem just and reasonable and commensurate with the benefit to the estate from the recovery so made. * * *

"When any person named as executor in a will or codicil defends it or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully oppose the allowance of any will or codicil, he shall be allowed out of the estate his necessary expenses and disbursements in such proceedings together with such compensation for his services and those of his attorneys as the court shall deem just and proper."
[5] Ulvin had been the attorney for decedent in his lifetime and had counseled the establishment of the Totten trusts for the reasons sufficiently set forth in the Jeruzal decision. He took the position that the Totten trusts were owned by the beneficiaries thereof and that the expense of such litigation would be unjustified. The correctness of his position in this case was sustained in the Jeruzal case.